1  Darren J. Kessler, SBN 114986
   3060 El Cerrito Plaza, Suite 371
2  El Cerrito, CA 94530
   Tel: 510-524-7750
3  E-mail: darren.j.kessler@gmail.com

4  John Houston Scott, SBN 72578
   Lizabeth N. de Vries, SBN 227215
5  **SCOTT LAW FIRM**
   1388 Sutter Street, Suite 715
6  San Francisco, CA 94109
   Tel: (415) 561-9603
7  Fax: (415) 561-9609
   E-mail: john@scottlawfirm.net
8  liza@scottlawfirm.net

9  Attorneys for Plaintiffs

10              **UNITED STATES DISTRICT COURT**

11             **NORTHERN DISTRICT OF CALIFORNIA**

12

13 | JEREMYAH P., by and through his Guardian | Case No:
   | Ad Litem, SHANNON VILLANUEVA |

14            Plaintiffs,

15 v.                                          **COMPLAINT FOR DAMAGES AND**
                                                **DECLARATORY AND INJUNCTIVE**
                                                **RELIEF**
16 COUNTY OF ALAMEDA, DIANE DAVIS
   MAAS, SUE MAY, TRIAD FAMILY                    1. § 1983 – 14th Am. Danger Creation
17 SERVICES, MARIA REFUGIO MOORE,                 2. § 1983 – 1st Am. Intimate Association
   and DOES 1-30, inclusive.                      3. § 1983 – 1st Am. Expressive Association
18                                                4. § 1983 – Failure to Train
              Defendants.                         5. § 1983 – Policy, Custom, Practice
19                                                6. § 1983 – Ratification
                                                  7. § 1983 – Injunctive Relief
20                                                8. Negligence

21                                             *JURY TRIAL DEMANDED*

22        COMES NOW PLAINTIFF JEREMYAH P., by and through his Guardian ad Litem,

23 SHANNON VILLANUEVA, who hereby as follows:

24                        **INTRODUCTION**

25        1.      On 9/30/15, defendant COUNTY OF ALAMEDA removed plaintiff JEREMYAH

26 P. and his then-two-year old sister, Mariah, from their biological parent's home. ALAMEDA

27 COUNTY contracted with defendant TRIAD FAMILY SERVICES to place these children in an

28 out-of-county foster home, with defendant foster parent MARIA MOORE.

2. By contract, ALAMEDA COUNTY authorized TRIAD to monitor, supervise, and remove foster children from placements where there was an imminent risk of harm. Four days after the plaintiff and his sister were placed in Moore's home, on 10/3/15, Mariah was "acting strangely after ingesting methamphetamine, and was hospitalized for "Amphetamine Abuse".

3. DIANE MAAS was the social worker from ALAMEDA COUNTY assigned to these foster siblings. Rather than comply with multitudes of duties and mandates to assess this emergency report, investigate it, and take immediate steps to prevent further harm, ALAMEDA COUNTY, TRIAD, and MAAS did nothing.

4. Defendants failed to remove these children from a foster home, with multiple other foster children, which allowed a minor to ingest narcotics. Predictably, JEREMYAH P.'s sister died in his arms of a second methamphetamine ingestion less than two weeks later, on 10/16/15.

5. Defendants all have Mariah's blood on their hands from a senseless tragic death.

### JURISDICTION AND VENUE

6. Jurisdiction is satisfied under 28 U.S.C. §§ 1343(a)(3) and 1343(a)(4), which provide for original jurisdiction in this Court of all suits brought pursuant to 42 U.S.C. section 1983. Jurisdiction is also conferred by 28 U.S.C. §1331(a) because claims for relief derive from the United States Constitution and the laws of the United States. This Court has supplemental jurisdiction over those claims of Plaintiff based on state laws, pursuant to 28 U.S.C. § 1367.

7. Venue properly lies in the Northern District of California, San Francisco/Oakland Division, pursuant to 28 U.S.C. sections 1391 and 1392 and Local Rule 3-2(e), in that the events and circumstances herein (a) a substantial part of the events or omissions giving rise to the claim occurred in the County of Alameda.; and (b) and at least one defendant is a local public agency and/or local public official located within /or residing within this judicial district.

### PARTIES

5. Plaintiff JEREMYAH P. (hereinafter "JEREMYAH"), whose date of birth is 5/29/10, was at all times mentioned herein a male citizen of the United States and of the State of California, entitled to all rights and privileges conferred thereby.

COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

6.     At all relevant times, JEREMYAH was and is a dependent child under the jurisdiction of the Alameda County Juvenile Court and is placed in a foster-care home. Concurrent with the filing of this Complaint, Shannon Villanueva applied to be appointed to serve as Guardian Ad Litem on behalf of JERMYAH in connection with this action.

7.     Defendant COUNTY OF ALAMEDA operates under its authority the Alameda County Social Services Agency, Department of Children and Family Services, Child Protective Services, (collectively referred to hereinafter "DCFS"). COUNTY OF ALAMEDA is a public entity duly organized and existing under the laws of the State of California. DCFS and COUNTY OF ALAMEDA shall be collectively and interchangeably referred to herein as "ALAMEDA COUNTY." At all times mentioned herein JEREMYAH was a minor and a foster child under the temporary custody of Defendant, ALAMEDA COUNTY.

8.     Defendant DIANE DAVIS MAAS (hereinafter "MAAS") was an employee, agent, and social worker of ALAMEDA COUNTY assigned to JEREMYAH and his sister Mariah. Here MAAS is sued in her individual and official capacities.

9.     Defendant SUE MAY (hereinafter "MAY") was an employee and agent of ALAMEDA COUNTY, which plaintiff alleges on information and belief was authorized to make placement decisions for JEREMYAH and Mariah. Here MAY is sued in her official capacity.

10.     Defendant TRIAD FAMILY SERVICES (hereinafter "TRIAD") is a business entity of unknown form and is an organization licensed by the State of California as a foster family agency. TRIAD is also an agent of and public actor with ALAMEDA COUNTY. Plaintiff alleges on information and belief that TRIAD conceived, developed, established, instituted and maintained a foster-care program for the placement of foster children for and on behalf of ALAMEDA COUNTY utilizing a foster parent it "certified" at all relevant times.

11.     Defendant MARIA REFUGIO MOORE (hereinafter "Moore") was the foster-care mother to JEREMYAH and Mariah from 9/30/15 through Mariah's death on 10/16/15.

12.     Plaintiff does not presently know the true names and capacities of defendants DOES 1 through 30, inclusive, and therefore sues them by these fictitious names. Plaintiff is

COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

informed and believes that DOES 1 through 30, and each of them, were responsible in some manner for the acts or omissions alleged herein or were responsible for implementing, promulgating, maintaining, sanctioning, condoning, and/or ratifying policies, procedures, practice, and/or customs, under which the other defendants committed the illegal or wrongful acts as alleged herein. Plaintiff will seek leave to amend this Complaint to add their true names and capacities when they have been ascertained.

13.     Plaintiff is informed and believes and thereupon alleges that each of the defendants named herein was acting under color of state law, in the course and scope of employment, or under a contract to act under state law with ALAMEDA COUNTY.

14.     In doing the acts or omissions complained of, defendants were the agents and employees of the remaining defendants, and in doing the things alleged, were acting within the course and scope of said agency and employment. In addition, plaintiff alleges all defendants and DOES acted in concert with and/or conspired with other defendants named herein.

### STATEMENT OF FACTS

**A. Foster children have the right to reasonably safe living conditions and services necessary to ensure protection from physical, psychological, and emotional harm.**

15.     For all periods relevant to this Complaint, California has agreed to administer its foster-care program pursuant to the Child Welfare Act, related regulations, and policies promulgated by the Secretary of the United States Department of Health and Human Services. The Child Welfare Act provides that "the State shall develop and implement standards to ensure that children in foster care placements in public or private agencies are provided quality services that protect the safety and health of the children." (42 U.S.C. § 671(a)(22).)

16.     Foster children also have federal-law entitlements arising from the Child Welfare Act, 42 U.S.C. §§ 670 et seq., and the Child Abuse Prevention and Treatment and Adoption Reform Act ("CAPTA"), 42 U.S.C. §§ 5101 et seq. These entitlements are property interests under the Due Process Clauses. Foster children are unconstitutionally deprived of these property interests when they are not provided with mandated supervision, protection, and care.

17.       Children removed from their home by a county social worker and placed in foster care or emergency shelter care with a foster home, referred to collectively herein as foster care, enjoy Due Process and Association rights under the Fourteenth and First Amendments of the United States Constitution, and the California Constitution.

18.       Foster children have, at the very least, a fundamental liberty interest in their own safety, health, and well-being, as well as intimate- and expressive-association interests. The duty to supervise and protect foster-children from harm by a foster parent is the quintessential responsibility of the social workers assigned to this helpless and vulnerable population.

**B. ALAMEDA COUNTY removed JEREMYAH and his sister, Mariah, from their biological mother's home, and placed them in "protective" custody on 9/30/15.**

19.       On 9/30/15 at 3:00 p.m., ALAMEDA COUNTY involuntarily removed then-five old JEREMYAH (DOB 5/29/2010) and his almost three-year old sister, Mariah M. (DOB 10/12/2013) (hereinafter "Mariah"), from their mother's custody pursuant to California Welfare and Institutions Code §§ 305 and/or 306. ALAMEDA COUNTY detained the minors and placed the children in the protective custody of DCFS of ALAMEDA COUNTY based on allegations of abuse and neglect while in the biological mother's home.

20.       ALAMEDA COUNTY initially took the siblings to an Assessment Center of the Alameda County Child Protective Services. There they were interviewed by a social worker and/or nurse and/or psychologist, including ALAMEDA COUNTY employee Sue MAY. That ALAMEDA COUNTY team concluded that Mariah was developmentally on target, both children were medically cleared, and there were no medical concerns about either child.

21.       ALAMEDA COUNTY, as the court-ordered temporary custodian, had the ultimate responsibility and authority to ensure the safety and well-being of these foster siblings. To do so, it contracted with TRIAD thereby delegating some of those responsibilities and transforming the private entity, TRIAD, into a state actor.

22.       ALAMEDA COUNTY retained TRIAD in part to place these foster siblings in one of TRIAD's vetted and certified out-of-county foster homes and to monitor the safety and well-being of these children in the out-of-county foster home.

- 4 -

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

**C. ALAMEDA COUNTY transferred JEREMYAH and Mariah to an out-of-county foster parent and home on 9/30/15, based on and through its contract with TRIAD.**

23.     Sue MAY as ALAMEDA COUNTY's "Placement Worker Representative" placed these foster siblings in an out-of-county home through a contract between ALAMEDA COUNTY and TRIAD. Although the contract was dated 10/1/15, the placement was on 9/30/15.

24.     In the 10/1/15 contract, TRIAD is identified as the Foster Family Agency ("FFA"); ALAMEDA COUNTY is identified as the Placement Agency. TRIAD agreed to perform numerous services, including the following: (1) provide these foster siblings with foster parent(s) who have been certified to care for these children's needs; (2) comply with all laws including Title 22, Division 6 regulations and all laws governing foster care; (3) notify ALAMEDA COUNTY within 24 hours by telephone followed in writing of "significant changes in the child's health, behavior" or "significant issues including suspected physical or psychological abuse, death, injury, unusual incidents"; (4) move the child in case of imminent risk to the child or family.

25.     ALAMEDA COUNTY expressly contracted with TRIAD to perform the governmental function of removing children from foster-care placements. The contract states: "The FFA has the authority to move a child in the case of imminent risk to the child or family. The FFA shall notify the placing agency within 24 hours of such move."

26.     As a foster family agency, TRIAD was also licensed and regulated by the State of California pursuant to California Health and Safety Code §§ 1502, 1506, 1530 and 22 Cal. Code Reg. §§ 88000 through 88087.

27.     TRIAD certified and ALAMEDA COUNTY approved Maria Refugio Moore and her home to receive placement of these foster siblings during the period of 9/30/15 through 10/16/15. Plaintiff alleges on information and belief that Moore should never have been so approved, nor should her live-in boyfriend been granted an exemption to reside with or assist in the care or supervision of these foster siblings.

28.     On or about 9/30/15, on behalf of and under the direction or approval of ALAMEDA COUNTY, TRIAD placed these foster siblings in Moore's foster home. From the

9/30/15 to 10/16/15, Moore had physical custody, care and control of JEREMYAH and Mariah, but ALAMEDA COUNTY retained legal custody.

29.     This placement with Moore was subject to the direction, approval, supervision, control and/or guidance of ALAMEDA COUNTY with and through its agent, TRIAD.

**D. After being in the exclusive care of ALAMEDA COUNTY and Moore for four days, on 10/3/15, Mariah was hospitalized for ingesting methamphetamine.**

30.     On 10/3/15, just days before Mariah's third birthday, Moore claimed that Mariah was "acting strange" and "talking to herself." That afternoon in a park, in JERMYAH's presence, Mariah "strange" behavior was to see monkeys and bunnies running around when none were there, to shake and sweat, and her heart was racing. She was acting hyper, much different from her natural and previous shy demeanor. JEREMYAH was very concerned about his baby sister, and, the fact that she needed medical care.

31.     Yet Moore waited to take Mariah to a doctor until after 9:00 p.m. when Moore took her to St. Joseph's Medical Center hospital's Emergency Room, many hours after observing Mariah's "strange" behaviors in a park. The hospital took a urine sample from Mariah at 11:00 p.m. On 10/4/15, the results revealed Mariah had methamphetamine in her system. Her final diagnosis was: "Altered level of consciousness" and "Amphetamine abuse."

32.     On 10/4/15, a healthcare worker of the hospital prepared and faxed a Suspected Child Abuse Report (hereinafter referred to as "S.C.A.R.") to the San Joaquin Human Services Agency, as mandated by Penal Code §11166(a). A report was also made to the Stockton Police.

33.     Plaintiff is informed and believes that, on or about 10/4/15, City of Stockton police officer Douglas Sheldon responded to the hospital to investigate the suspected abuse and/or neglect of Mariah and further risk to her and other children in the foster home, including JEREMYAH, in relation to Mariah's exposure to methamphetamine.

34.     Plaintiff is informed and believes that, on or about 10/4/15, a City of Stockton officer also left a voicemail for DOE at TRIAD regarding these facts. Also on that date, plaintiff alleges on information and belief the hospital discharged Mariah back into Moore's care.

///

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

35.     MAAS, and on information and belief MAY, TRIAD, and DOES, had access to Mariah's medical records and indeed were in possession of one medical record clearly indicating abuse or neglect by virtue of Mariah's methamphetamine exposure. They were on constructive notice about the details of 10/3/15, and the likelihood narcotics would again be available for the foster siblings to ingest as a foreseeable and objectively significant risk of harm while the children were in foster parent Moore's ongoing care.

36.     In Mariah's discharge papers, she was referred to obtain follow-up care by a physician following her being under the influence of methamphetamine. But no defendant procured any further care for Mariah or JEREMYAH before her death less than two weeks later.

**E. MAAS and ALAMEDA COUNTY failed to disclose facts regarding Mariah's methamphetamine exposure to the Dependency Court, Minor's Counsel, or anyone who could have advocated for and protected these foster siblings.**

37.     ALAMEDA COUNTY social worker MAAS was assigned as the siblings' case social worker to draft documents to qualify the siblings for federal income, and, prepare a Detention Report in advance of the 10/5/15 detention hearing for ALAMEDA COUNTY.

38.     On information and belief, a DOE at TRIAD advised a DOE at ALAMEDA COUNTY on 10/4/15 about Mariah's hospitalization and methamphetamine ingestion.

39.     On 10/5/2015, Joanne Willis, a TRIAD social-worker, left a voicemail for MAAS regarding these issues. Also on 10/5/15, a DOE at TRIAD faxed a one-page summary medical record from St. Joseph's Medical Center to MAAS. That record advised MAAS that Mariah was seen on 10/3/15 for "Altered level of consciousness" and "Amphetamine abuse." It also advised that Mariah was referred for follow up care to her primary care physician.

40.     Yet, at the 10/5/15 detention hearing, MAAS, MAY, ALAMEDA COUNTY, TRIAD and DOES failed to inform the Court or minors' counsel about Mariah's 10/3/15 strange behavior, hospitalization, or urine test revealing methamphetamine. Notably, there was no information about this in MAAS's written Detention Report or any oral or written supplemental report to the Court or anyone else. Without this information, the Court ordered JEREMYAH and Mariah detained out of the home of their parent and to be placed into foster care on 10/5/15

- 7 -

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

without being provided with accurate information to assess the safety of the current placement with Moore. And no one involved had information to initiate a removal, other than defendants.

41.    On 10/6/15, Willis spoke with MAAS to discuss these facts with Willis. MAAS's only response was to utter: "Poor thing."

**F.   ALAMEDA COUNTY, MAAS, MAY and DOEs received multiple reports about Mariah's methamphetamine exposure on October 3, 4, 5, 6, and 14, but did nothing to prevent further neglect or abuse prior to Mariah's death on 10/16/15.**

42.    As described above, TRIAD made abuse or neglect referrals to ALAMEDA COUNTY on 10/4/15, 10/5/16 and 10/6/16.

43.    Also on 10/6/15, the San Joaquin Human Services Agency (SJHSA) called the DCFS of ALAMEDA COUNTY, repeatedly, and requested a return call, and, contacted a hotline to obtain a fax number for ALAMEDA COUNTY. That day SJHSA faxed its own S.C.A.R. regarding Mariah's 10/3/15 methamphetamine exposure. Notably, the SJHSA assessed the referral it received on 10/4/15 as requiring a response within ten days pursuant to a statewide Emergency Referral Protocol, described below. But San Juaquin County was not legally responsible for the direct supervision and services for these children; ALAMEDA COUNTY was.

44.    Having received *no* response from ALAMEDA COUNTY, on 10/14/15, the SJHSA again called DCFS and DOES to inquire as to the status of this referral regarding Mariah's methamphetamine exposure while in foster care. A DOE at ALAMEDA COUNTY advised SJHSA that the referral was routed to the "open" social worker, MAAS.

45.    On information and belief, SJHSA needed to ensure ALAMEDA COUNTY fulfilled its mandatory duties to these children within ten days, i.e., by 10/14/15. Accordingly, it made three attempts at reporting on 10/5/15, and, one on 10/14/15.

46.    Plaintiff alleges on information and belief that ALAMEDA COUNTY never responded to SJHSA.

///

///

- 8 -

1

2

**G. The State of California has an Emergency Response Protocol which ALAMEDA COUNTY and its staff (and agent TRIAD) must enforce to protect foster children.**

3

47.       The State of California requires an Emergency Response Protocol be

4

implemented in response to oral or written referrals that a child was subjected to abuse or neglect

5

under Wel. & Inst. Code §16501(f). The implementing regulations require the social worker

6

assigned to respond be trained and skilled in emergency response. That social worker must also

7

initiate and complete the Emergency Response Protocol process to determine whether an in-

8

person investigation is required, and, if so, within one or ten days. A social worker must conduct

9

an in-person investigation of all referrals received from a law-enforcement agency which allege

10

abuse or neglect of a child.

11

48.       Despite this requirement, plaintiff alleges on information and belief that it was

12

TRIAD's training, custom or practice to only inform the assigned-case social worker about any

13

new allegations of abuse and neglect, rather than file a "new" report or a written referral which

14

would trigger a mandatory response including the statewide Emergency Response Protocol. This

15

practice or custom was contrary to TRIAD's duties as a mandatory reporter, and, its contractual

16

agreement with ALAMEDA COUNTY to provide a writing regarding any such referral.

17

49.       Here, on information and belief plaintiff alleges TRIAD failed to submit a

18

written report to ALAMEDA COUNTY regarding 10/3/15. Instead, all DOES and Willis at

19

TRIAD did was contact MAAS on the telephone.

20

50.       Plaintiff alleges on information and belief that in ALAMEDA COUNTY,

21

screeners in its Emergency Response Unit, which is part of Child Protective Services, do intake of

22

telephonic or written child-abuse or -neglect referrals. Screeners are empowered to assess the

23

seriousness of the report and designate whether there should be any follow-up. If so, the decision

24

must be made whether an investigation be completed in one or ten days. Written referrals have

25

the opportunity to be viewed by more individuals by their very nature. The matter is assigned to

26

the case social worker for a foster child if he or she is the subject of the report.

27

51.       Plaintiff also alleges on information and belief that ALAMEDA COUNTY's

28

training, practice or custom rendered a mandatory and timely response system including the

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

1
2
3

Emergency Response Protocol infeasible or impossible if any report/referral, such as Mariah's exposure to methamphetamine on 10/3/15, required a one-or ten-day response, and, that social worker were unavailable, disinterested, untrained, or deliberately indifferent, as was MAAS.

4
5
6
7
8
9
10

52.      Plaintiff further alleges on information and belief that ALAMEDA COUNTY, MAAS, MAY, and DOES failed to make any Emergency Referral Protocol assessment in response to the 10/4/15, 10/5/15, 10/6/15, or 10/14/15 referrals. Rather these defendants failed to assess this referral, follow-up, conduct any investigation, obtain independent statements from any witnesses or residents in Moore's home or the plaintiff, or inspect the safety of the foster home. No response occurred until the next report was made for Mariah's death on 10/16/15.

11

**H.   For this particular out-of-county foster-care placement, TRIAD served a public function, engaged in joint action, and satisfied a governmental nexus.**

12
13
14
15
16
17
18
19
20
21

53.      TRIAD performed multiple public functions by virtue of its contract with ALAMEDA COUNTY and its physical proximity to this out-of-county placement. Public functions traditionally and exclusively governmental include but are not limited to ensuring foster children's health and welfare relating to: (a) screening, certification and licensure, and placement of minors in a safe home, with safe foster parents and co-habitants; (b) procuring necessarily medical care; (c) ensuring foster care is free from neglect or physical abuse; (d) regular and necessary monitoring and supervision; (e) prompt response and investigation of complaints relating to abuse or neglect; (f) removal of children from unsafe foster-care placements; (g) recruitment, approval and training of sufficiently qualified social workers and foster parents; and, (h) providing services and support to foster parents and children.

22
23
24
25
26
27
28

54.      ALAMEDA COUNTY put itself in an interdependent relationship with TRIAD to perform its mandatory duties. Pursuant to Welfare and Institutions Code §§ 281, 16000.1(a)(1), 16001.9, 16010, 16504, Title 22, and other laws, defendants MAAS, MAY, TRIAD, and DOES had mandatory duties to protect JEREMYAH and Mariah and to supervise and monitor their placement in a foster home. Mandatory duties are set forth by the California Department of Social Services in the Manual of Policies and Procedures - Child Welfare Services, DSS Regulation at 31-000 *et. seq.*

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

- 10 -

55.     These defendants were also required to ensure the safety, protection and proper care of foster children placed in foster homes who receive Federal AFDC-FC funds per 42 U.S.C. 672(a)(1)-(3), including both JEREMYAH and Mariah, as provided by 42 U.S.C. §671(a)(10) and (16) and §675(1).

56.     Here, particularly after receiving information about the 10/3/15 referral, ALAMEDA COUNTY relied upon TRIAD to supervise and monitor these foster siblings in Moore's out-of-county home. TRIAD's social worker Joanne Willis visited the siblings (and other foster children placed) in Moore's home on 10/4/15, 10/7/15, and 10/14/15. She also met the siblings on 10/15/15 at TRIAD. Plaintiff alleges on information and belief that TRIAD was thus serving as ALAMEDA COUNTY's agent to perform affirmative mandatory duties to supervise and monitor the children.

57.     Plaintiff further alleges on information and belief that ALAMEDA COUNTY relied upon TRIAD to perform other or all of its mandatory duties. Collectively, TRIAD's, ALAMEDA COUNTY's, MAAS's, MAY's, and DOES' misconduct was joint action.

58.     ALAMEDA COUNTY also utilized TRIAD to solicit, investigate and train foster parents to certify them as foster parents to place foster children that are in the legal care and custody of ALAMEDA COUNTY, therefore benefitting the County by outsourcing, when on information and belief ALAMEDA COUNTY's staffing was insufficient.

59.     In addition, plaintiff alleges on information and belief based on facts alleged herein that ALAMEDA COUNTY and TRIAD workers acted in concert to effect these deprivations of Constitutional rights described throughout this complaint.

I.  **ALAMEDA COUNTY, TRIAD and their staff did nothing to prevent Mariah's death on 10/16/15 and her brother's foreseeable damages.**

60.     MAAS, and on information and belief MAY, TRIAD and DOES, were authorized and mandated to: (1) make entries into a statewide case-management system (CMS) to track contemporaneous descriptions of events effecting the siblings, particularly important for out-of-county placements; (2) notify the licensing office with jurisdiction over TRIAD about the methamphetamine exposure; (3) supervise and monitor these foster siblings' placement; (4)

- 11 -

procure medical records and care as needed; (5) respond to the 10/3/15 referral of abuse or neglect by: (a) completing an Emergency Response Protocol, or (b) conducting an immediate in-person investigation, or (c) conducting a timely in-person investigation, and, (d) enter the investigation disposition into the child's record, and, (e) submit the result of the investigation with the Department of Justice; (6) assess the siblings' physical and emotional condition; (7) assess the safety of Moore's home; and, (8) safeguard the children's growth and development.

61.     MAAS, and on information and belief MAY, TRIAD, and DOES negligently, recklessly, and maliciously failed to: (1) document anything between 9/30/15 and 10/16/15 including the 10/3/15 incident except late-made entries;[1] (2) notify any agency about the 10/3/15 event; (3) adequately supervise and monitor the children; (4) procure any medical records or care before Mariah's death, (5) do anything to respond to the 10/3/15 methamphetamine-exposure report; (6) assess the children's physical and emotional condition particularly following Mariah's "amphetamine abuse"; (7) assess the safety of MOORE's home; and, (8) safeguard the children's growth and development by investigating, responding and removing these children.

62.     Defendants knew or should have known that failing to investigate, respond, and/or remove these foster siblings from Moore's home created a risk that Mariah or another minor including JEREMYAH would be exposed to methamphetamine and its toxic effects including the possibility of death.  Accordingly, ALAMEDA COUNTY, MAAS, MAY, TRIAD, and DOES negligently, carelessly, recklessly, willfully and/or maliciously made decisions or recommendations allowing these foster siblings to remain in Moore's home.

63.     Plaintiff alleges on information and belief that defendants conspired to retain the children in obvious danger by allowing them to be placed with someone they knew to be unfit, not investigating the toxic drugging of an almost three-year old, not removing the siblings from that home, and by abandoning the care of both siblings, knowing the foster mother or one of her associates had exposed Mariah to methamphetamine, and, was historically and currently unfit.

---

[1] On 9/30/16, MAY's supervisors at ALAMEDA COUNTY instructed her to "recreate" case notes between the date of the placement, 9/30/15, and her telephone conversation with the TRIAD placement person, Nyasha Dupree, on 10/8/15.

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

**J. On 10/16/15, three-year old Mariah foreseeably and predictably, and again, ingested methamphetamine, received no immediate medical care, again, and died of methamphetamine toxicity while in her five-year old brother JEREMYAH's arms.**

64.     Tragically and predictably, on 10/16/15 Mariah was again allowed access to illegal and toxic drugs while in the same foster-care placement with Moore. That night before, Mariah exhibited similar "bazaar" behavior and symptoms that she did on 10/3/15. She was up all night complaining spiders were crawling all over her. The next morning, Moore alleged Mariah was taking "a nap" so she left the now three-year old, who was manifesting symptoms of methamphetamine exposure, with her boyfriend to do errands.

65.     In JEREMYAH's presence, Mariah continued to be petrified by the "spiders" she was seeing, her hands were cramped and contorted, here fingers were shaking, she was talking nonsense with her eyes closed, she was cold, and her stomach was convulsing. She presented with the same symptoms she had on 10/3/15.

66.     Plaintiff alleges on information and belief that JEREMYAH complained to Moore, her boyfriend, and others in the home that something was wrong with his sister.

67.     Hours later, Mariah died in JEREMYAH's arms. No medical care was procured until she was dead, after 11:00 a.m. An adult attempted to revive Mariah in front of JEREMYAH when ambulance personnel were called and found Mariah unresponsive. Paramedics reported that a baggie with a methamphetamine rock was found in JEREMYAH's and Mariah's room that morning.

68.     The San Joaquin Sherriff-Coroner conducted an autopsy and determined that Mariah died of methamphetamine toxicity.

69.     Later on 10/16/15, JEREMYAH was removed from this foster home and placed in temporary shelter and, thereafter, placed into another foster home.

70.     In a letter dated 1/25/16, fifteen months after 10/16/15, Michelle Love, the Assistant Agency Director of Alameda County Social Services of ALAMEDA COUNTY wrote: "we are not aware of whether that fatality was caused by abuse or neglect" in response to Mariah's biological mother's record request.

///

- 13 -

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

71.     In contrast, in response to the same request by Mariah's biological mother, Mikey Habbestd, Deputy Director, Children's Services Bureau, San Joaquin County Human Services Agency wrote on 4/26/16 that "the failure of the foster parent to seek medical care sooner was a material contributing factor to Mariah's death."

72.     Logic compels interpreting Mariah's senseless death and exposure to methamphetamine, twice in two weeks, as an obvious product of abuse and neglect.

### STATEMENT OF DAMAGES

73.     JEREMYAH has suffered, and continues to suffer, general damages including the lingering and reoccurring effects of extreme emotional trauma from the danger created of experiencing his sister, Mariah, suffer from drug exposure and death, as well as a loss of association, psychological injury, anguish, worry, humiliation, fear, emotional and mental distress, and anxiety as a result of defendants' conduct in an amount to be proved at trial.

74.     As a further result of defendants' conduct, JEREMYAH incurred and will incur general and special damages, occurring in the past and reasonably certain to occur in the future as proven at trial, in favor of plaintiff, in an amount to be proved at trial.

75.     The individual defendants' conduct was wanton, malicious and oppressive and/or done with a conscious or reckless disregard for the rights of plaintiff.

76.     Plaintiff, through his Guardian ad Litem, has retained private counsel to represent her adoptive son JEREMYAH in this matter. To the extent permitted by law, the plaintiff is entitled to his attorneys' fees and costs.

77.     JEREMYAH therefore prays for an award of punitive and exemplary damages against individual or non-public-entity defendants including DOES according to proof.

### CAUSES OF ACTIONS
### FIRST CAUSE OF ACTION
[42 U.S.C. §1983 – Abridgement of Civil Rights – State-Created Danger
Against Defendants MAAS, MAY, and DOES]

78.     Plaintiff incorporates by reference all paragraphs of this complaint herein.

79.     Defendants MAAS, MAY, and DOES employed by ALAMEDA COUNTY or TRIAD acted under color of law.

- 14 -

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

80.        Foster children's due-process rights under the Fourteenth Amendment of the United States Constitution are violated when a state official affirmatively and with deliberate indifference places a child in danger he otherwise would not have faced.

81.        Defendants were deliberately indifferent to a known and obvious danger. An objective substantial risk of harm is exemplified by a five-old's almost three-year old sister requiring hospitalization for ingesting methamphetamine while in the exclusive care and custody of the same foster parent for the previous four days. Defendants were subjectively aware of these facts from which an inference could be drawn that a substantial risk of serious harm existed. Either they drew that inference or would have been compelled to draw that inference.

82.        Defendants' misconduct deprived JEREMYAH (and his sister) of Fourteenth Amendment rights by affirmatively placing, deciding, or recommending that JEREMYAH (and Mariah) continue to be placed in Moore's foster-care home, without engaging in any necessary acts to protect these foster siblings from future harm after Mariah ingested methamphetamine on 10/3/15. Defendants' misconduct resulted in JEREMYAH (and Mariah) living with a foreseeable and significant risk of danger they otherwise would not have faced— that JEREMYAH or his sister would die of a methamphetamine overdose.

83.        Defendants' misconduct was a substantial factor in causing plaintiff's harm.

WHEREFORE, plaintiff prays for relief as set forth herein.

### SECOND CAUSE OF ACTION
[42 U.S.C. §1983 – First and Fourteenth Amendments – Intimate Association
Against Defendants MAAS, MAY, and DOES]

84.   Plaintiff incorporates all paragraphs of this complaint herein.

85.   Defendants MAAS, MAY, and DOES employed by ALAMEDA COUNTY or TRIAD acted under color of law.

86. Plaintiff's right to associate with his sister, Mariah, is a fundamental right protected by the First and the Fourteenth Amendments. Family relationships involve deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of life.

- 15 -

87.   Generally, sibling relationships are intimate human relationships that are protected from unjustified interference by a State. In the foster-care context, it is well-established, as codified by the California Welfare & Institutions Code relating to foster children, and known by any reasonable person working with this population that maintaining sibling relationships, under the right circumstances, is imperative for the emotional well-being of the foster sibling child. This is particularly true for children who will never be returned to their parents; Siblings may be the only true family they will ever have.

88.   Specifically, JEREMYAH had only one sibling, Mariah. He and Mariah had just been separated from their biological mother by the State. JEREMYAH's birth mother's parental rights were terminated on 7/7/17.

89.   Defendants were deliberately indifferent to plaintiff's right of association. An objective substantial risk of harm is exemplified by a five-old's almost three-year old sister requiring hospitalization for ingesting methamphetamine while in the exclusive care and custody of the same foster parent for the previous four days. Defendants were subjectively aware of these facts from which an inference could be drawn that a substantial risk of serious harm existed. Either they drew that inference or would have been compelled to draw that inference.

90. These defendants' misconduct deprived JEREMYAH of his rights to intimate association under the First and Fourteenth Amendments to the United States Constitution.

91. Defendants' misconduct was a substantial factor in causing plaintiff's harm.

WHEREFORE, plaintiff prays for relief as set forth herein.

### THIRD CAUSE OF ACTION
[42 U.S.C. §1983 – First and Fourteenth Amendments – Expressive Association Against Defendants MAAS, MAY, and DOES]

92. Plaintiff incorporates all paragraphs of this complaint herein.

93. Defendants MAAS, MAY, and DOES employed by ALAMEDA COUNTY or TRIAD acted under color of law.

94.   Plaintiff's right to expressive association with this sister, Mariah, is a fundamental right protected by the First and the Fourteenth Amendments. JEREMYAH enjoyed a close,

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

nurturing, and protective relationship with his sister. JEREMYAH regularly taught his sister new things she did not understand such as how to avoid dangers and be careful with animals and other children. JEREMYAH also shared his guidance, fun, and survival skills with Mariah throughout their precious time together in different homes.

95. Defendants were deliberately indifferent to plaintiff's right of association. An objective substantial risk of harm is exemplified by a five-old's almost three-year old sister requiring hospitalization for ingesting methamphetamine while in the exclusive care and custody of the same foster parent for the previous four days. Defendants were subjectively aware of these facts from which an inference could be drawn that a substantial risk of serious harm existed. Either they drew that inference or would have been compelled to draw that inference.

96. These defendants' misconduct deprived JEREMYAH of his rights to expressive association under the First and Fourteenth Amendments to the United States Constitution.

97. Defendants' misconduct was a substantial factor in causing plaintiff's harm.

WHEREFORE, plaintiff prays for relief as set forth herein.

## FOURTH CAUSE OF ACTION
[42 U.S.C. §1983 – Municipal Liability
Against Defendants ALAMEDA COUNTY and TRIAD – policy of failure to train]

98.     Plaintiff incorporates all paragraphs into this complaint herein.

99.     The acts and omissions of MAAS, MAY, and DOES, acting under state law, deprived the plaintiff of his rights under the First and Fourteenth Amendments.

100.     The training policies of the defendants ALAMEDA COUNTY and TRIAD were not adequate to prevent violations of the law by its employees or train its employees to handle the usual and recurring situations with which they must deal—including how to respond to subsequent allegations that a foster child is being abused or neglected while in foster care.

101.     ALAMEDA COUNTY and TRIAD were deliberately indifferent to the substantial risk that each entity's training policies were inadequate to prevent violations of law by its employees, and, known or obvious consequences of each entity's failure to train its employees adequately.

102.     The failure of ALAMEDA COUNTY and TRIAD to prevent violations of law by its employees or to provide adequate training caused the deprivation of the plaintiff's rights by MAAS, MAY, and DOE(s); that is, the defendants' failures to prevent violations of law by its employees and to train them adequately is so closely related to the deprivation of the plaintiff's rights as to be the moving force that caused the ultimate injury.

WHEREFORE, plaintiff prays for relief as set forth herein.

### FIFTH CAUSE OF ACTION
[42 U.S.C. §1983 – Municipal Liability
Against Defendants ALAMEDA COUNTY and TRIAD – customs, practices, de facto policy]

103.     Plaintiff incorporates all paragraphs of this complaint herein.

104.     The acts and omissions of MAAS, MAY, and DOEs, acting under state law, deprived the plaintiff of his rights under the First and Fourteenth Amendments.

105.     MAAS, MAY, and DOEs actions and omissions were pursuant to customs, practices and de facto policies of ALAMEDA COUNTY and/or TRIAD.

106.     ALAMEDA COUNTY's and/or TRIAD's customs, practices and *de facto* policies caused the deprivation of the plaintiff's rights by MAAS, MAY and DOES. That is ALAMEDA COUNTY and/or TRIAD's practices or customs are so closely related to the deprivation of the plaintiff's rights as to be the moving force that caused the ultimate injury.

107.     Plaintiff alleges on information and belief that ALAMEDA COUNTY's and TRIAD's customs, practices or *de facto* policies are in the alternative policies of inaction when enforcement was called for, such that these policies amount to deliberate indifference.

108.     Defendants were deliberately indifferent to plaintiff's due-process and association rights as described herein. An objective substantial risk of harm is exemplified by a five-old's almost three-year old sister requiring hospitalization for ingesting methamphetamine while in the exclusive care and custody of the same foster parent for the previous four days. Defendants were subjectively aware of these facts from which an inference could be drawn that a substantial risk of serious harm existed. Either they drew that inference or would have been compelled to draw that inference.

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

109.     Defendants' misconduct was a substantial factor in causing plaintiff's harm.

WHEREFORE, plaintiff prays for relief as set forth herein.

### SIXTH CAUSE OF ACTION
[42 U.S.C. §1983 – Municipal Liability
Against Defendants ALAMEDA COUNTY – Ratification]

110.     Plaintiff incorporates all paragraphs of this complaint herein.

111.     The acts and omissions of MAAS, MAY, and DOEs, acting under state law, deprived the plaintiff of his rights under the First and Fourteenth Amendments.

112.     Plaintiff alleges on information and belief that a final policymaker for ALAMEDA COUNTY acted under color of state law, and had final policymaking authority from ALAMEDA COUNTY concerning the acts and omissions by MAAS, MAY, and DOES.

113.     Plaintiff further alleges on information and belief that a final policymaker ratified MAAS's, MAY's and DOE's acts and omissions, that is, he or she knew of and specifically made a deliberate choice to approve MAAS, MAY, and DOE's acts and omissions and the basis for them.

WHEREFORE, plaintiff prays for relief as set forth herein.

### SEVENTH CAUSE OF ACTION
[Declaratory & Injunctive Relief against Defendant ALAMEDA COUNTY]

114.     Plaintiff incorporates all paragraphs into this cause of action.

115.     There is currently an actual controversy between the plaintiff and ALAMEDA COUNTY that is ripe for adjudication as to whether the ALAMEDA COUNTY's municipal liability was triggered by training, customs or practice, or ratification to comply with Federal and State law to respond, investigate and take necessary action when it receives a report/referral of abuse or neglect to protect foster children in its legal custody.

116.     JEREMYAH is a dependent foster child in the legal custody of ALAMEDA COUNTY who resides in a foster home.

117.     ALAMEDA COUNTY's failure to respond and investigate neglect or abuse reports/referrals as described herein deprives plaintiff of his rights, privileges and immunities

under 42 U.S.C. § 1983.

118.     Plaintiff is informed and believes that ALAMEDA COUNTY continued these practices after Mariah's death on 10/15/15, and, will continue to fail to comply with these mandates absent injunctive or declaratory relief.

119.     Plaintiff seeks injunctive or declaratory relief as necessary to ensure ALAMEDA COUNTY remedy the unlawful practices described in this complaint.

120.     Plaintiff further seeks injunctive or declaratory relief requiring ALAMEDA COUNTY to develop, implement, and, enforce systems to effectively coordinate and ensure a properly trained social worker timely respond to all referrals/reports of abuse or neglect against children in ALAMEDA COUNTY's custody.

121.     Plaintiff suffered injuries that are irreparable in nature and the proximate result of this defendant's failures.

WHEREFORE, plaintiff prays for relief as set forth herein.

**EIGHTH CAUSE OF ACTION**
[Negligence Against Defendants TRIAD, Moore, and DOES]

122.     Plaintiff incorporates all paragraphs of this complaint herein.

123.     There was a special relationship between these foster siblings and TRIAD, as well as between these siblings and Moore, and possibly with DOES as well, which triggered several duties to act reasonably and with due care.

124.     TRIAD was negligent in its failure to perform numerous services as a foster family agency retained by ALAMEDA COUNTY. Also, TRIAD committed negligence *per se* by violating numerous statutes, regulations, and other laws cited herein and to be discovered. These laws were designed to protect children in the foster-care system, like JEREMYAH, against harm inflicted upon him which is the subject of this complaint.

125.     Plaintiff alleges on information and belief that Moore was an agent of TRIAD who was at all relevant times providing foster-care and a foster home to multiple children including JEREMYAH and his sister, rendering Moore's negligence attributable to TRIAD

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

through *respondeat superior*.

126.     Plaintiff timely submitted a claim to the Foster Family Insurance Fund to the State of California Office of Risk and Insurance Management for the damages sought in this action pursuant to Health and Safety Code § 1527.6(d) in relation to the acts and omissions by defendant, Moore. The claim was denied on November 8, 2016.

127.     TRIAD and Moore negligently failed to monitor, supervise, care for, attend to and manage the metal and physical health and safety, and welfare and well-being, of the plaintiff (and his sister.)

128.     TRIAD and Moore also negligently failed to follow reasonable and customary procedures for the supervision of foster children and maintaining a safe environment for these siblings when JEREMYAH was in the home of Moore and DOES.

129.     In addition, Moore and DOES negligently, carelessly and recklessly failed to supervise, monitor and control Mariah in the presence of JEREMYAH, such that Mariah was provided access to methamphetamine and did ingest the same on two occasions resulting in her hospitalization and ultimately, her death.

130.     Defendants' misconduct was a substantial factor in causing plaintiff's damages.

WHEREFORE, plaintiff prays for relief as set forth herein.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment against defendants, as follows.

1.     For compensatory and economic damages according to proof;

2.     For general damages according to proof;

3.     For damages provided by law;

4.     For an award of interest, including prejudgment interest at the legal rate;

5.     For an award of attorneys' fees and costs;

6.     For punitive damages against the individual and non-public entity defendants;

7.     For declaratory and injunctive relief;

8.     For other and further relief as the Court may deem just, necessary and appropriate.

- 21 -

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

1

**JURY TRIAL DEMAND**

2

Plaintiff hereby requests a jury trial on all issues so triable.

3

**SCOTT LAW FIRM**

4

5
Dated:  October 2, 2017                                    /s/Darren Kessler

6                                                                    Darren Kessler and Lizabeth N. de Vries
                                                                       Attorneys for Plaintiffs
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109