**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **J.P., BY AND THROUGH HIS GUARDIAN AD LITEM, SHANNON VILLANUEVA,**<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>**COUNTY OF ALAMEDA, ET AL.,**<br><br>　　　　　Defendants. | CASE NO. 17-cv-05679-YGR<br><br>**ORDER GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 21 |

Plaintiff J.P., by and through his guardian *ad litem*, brings this civil rights action against defendants County of Alameda (the "County"), Diane Davis Maas in her individual and official capacities, Sue May in her official capacity, Triad Family Services ("Triad"), and Maria Refugio Moore. Relevant here, plaintiff asserts the following claims against the County, Maas, and May (the "County Defendants") pursuant to 42 U.S.C. section 1983 for: (1) violation of the Fourteenth Amendment – state-created danger (against Maas and May); violation of the First and Fourteenth Amendments based on (2) intimate association (against Maas and May), (3) expressive association (against Maas and May), (4) municipal liability – policy of failure to train (against the County), (5) municipal liability – customs, practices, de facto policy (against the County), (6) municipal liability – ratification (against the County); and (7) declaratory and injunctive relief (against the County). (Dkt. No. 1 at 14–20 ("Complaint").)[1]

The County Defendants have moved to dismiss all counts alleged against them. (Dkt. No.

---

[1] The Court notes that the descriptions of plaintiff's causes of action as they appear in the body of the complaint (*See* Complaint at pp. 14–20) are inconsistent with the descriptions of the same causes of action as they appear on the caption page of the complaint (Complaint at ECF 1). In light of these inconsistencies, the Court interprets plaintiff's claims based on the arguments made in plaintiff's opposition to the County Defendants' motion to dismiss. (*See* Dkt. No. 23 ("Opposition").)

21 ("Motion").) Having carefully considered the pleadings in this action, the papers submitted, and oral arguments held on February 13, 2018, the Court hereby **GRANTS IN PART AND DENIES IN PART** the County Defendants' motion to dismiss. In sum, plaintiff can state: (i) a claim for violation of his Fourteenth Amendment rights to be free from state-created danger and to minimally adequate care; (ii) a claim for violation of his First Amendment right to familial association; and (iii) corresponding municipal liability claims.

**I.    SUMMARY OF RELEVANT ALLEGATIONS**

The complaint alleges as follows:

This case arises from tragic events that occurred in the fall of 2015 and resulted in the untimely death of plaintiff's two-year-old sister, M.M. Specifically, plaintiff alleges that he and M.M. (together, the "foster siblings") were involuntarily removed from their biological mother's custody on September 30, 2015 due to allegations of abuse and neglect suffered by the children. (Complaint ¶ 19.) Later that day, defendant May, a County employee, placed plaintiff and M.M. in the care of defendant Moore, an out-of-county foster mother approved by defendants Triad and the County. (*Id*. ¶¶ 23, 27, 28.) Moore's live-in boyfriend at the time was granted an exemption to reside with and assist in the care or supervision of the foster siblings. (*Id*. ¶ 27.)

On the evening of October 3, 2015, just days before M.M.'s third birthday, Moore took M.M. to the hospital after having observed the child's "strange" behavior earlier that day at the park. (*Id*. ¶¶ 30, 31.) Specifically, M.M. hallucinated in the presence of J.P., her brother, began shaking and sweating, and experienced an elevated heart rate. (*Id*. ¶ 30.) The following day, the results of the urine sample taken by the hospital revealed that M.M. had methamphetamine in her system. (*Id*.) Her final diagnosis was "Altered level of consciousness" and "Amphetamine abuse." (*Id*.)

The County, through May and social worker Maas, was subsequently made aware of M.M.'s hospitalization for ingesting methamphetamine. (*Id.* ¶¶ 35, 39.) However, Maas and May failed to assess an emergency report that M.M. had ingested methamphetamine, or investigate it, or take any immediate steps to prevent further harm, despite being authorized and mandated to do so. (*Id*. ¶¶ 44, 46, 49, 51, 52, 54, 55, 60–63.) Consequently, on October 16, 2015, M.M. was

2

again exposed to methamphetamine in the same foster home. (*Id*. ¶ 64.) Once again, in plaintiff's presence, M.M. exhibited unusual behavior and symptoms, including being petrified by imaginary spiders, cramping and contortion of her hands, shaking fingers, speaking incoherently with her eyes closed, and stomach spasms. (*Id*. ¶ 65.) Hours later, M.M. died in her brother's arms. (*Id*. ¶ 67.)

**II. LEGAL FRAMEWORK**

**A. Rule 12(b)(6) Motion to Dismiss**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief may be granted. Dismissal under Rule 12(b)(6) is proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). All allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. *Johnson v. Lucent Techs., Inc.*, 653 F.3d 1000, 1010 (9th Cir. 2011).

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim [for] relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the facts alleged do not support a reasonable inference of liability, stronger than a mere possibility, the claim must be dismissed. *Id*. at 678–79. Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1182 (9th Cir. 2004).

**B. 42 U.S.C. Section 1983**

Here, the complaint asserts claims under 42 U.S.C. section 1983 (herein "Section 1983"), which provides for a cause of action against a person who, acting under color of state law, deprives another of rights guaranteed under the United States Constitution or the laws of the United States. "To prove a case under section 1983, the plaintiff must demonstrate that (1) the action occurred 'under color of state law' and (2) the action resulted in the deprivation of a

3

constitutional right or federal statutory right." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). "The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker v. McCollan*, 443 U.S. 137, 140 (1979) (quoting 42 U.S.C. § 1983).[2]

### C. Qualified Immunity

"Qualified immunity affords limited protection to public officials faced with liability under 42 U.S.C. § 1983, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Shafer v. Cty. of Santa Barbara*, 868 F.3d 1110, 1115 (9th Cir. 2017) (internal quotation marks omitted). "To determine whether qualified immunity applies in a given case, [courts] must determine: (1) whether a public official has violated a plaintiff's constitutionally protected right; and (2) whether the particular right that the official has violated was clearly established at the time of the violation." *Id*. "For a right to be clearly established, case law must ordinarily have been earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he was doing violates federal law." *Id*. at 1117. "It is the plaintiff who 'bears the burden of showing that the rights allegedly violated were 'clearly established.'" *Id*. at 1118 (quoting *LSO, Ltd. v. Stroh*, 205 F. 3d 1146, 1157 (9th Cir. 2000)).

## III. DISCUSSION

The County Defendants' motion challenges the alleged constitutional rights asserted and raises a qualified immunity defense. By way of overview, the County Defendants, relying principally on *Ward v. City of San Jose*, 967 F.2d 280 (9th Cir. 1991), move to dismiss plaintiff's entire complaint, arguing that "[a]s a sibling, Plaintiff does not have standing to assert a claim for loss of familial association under the Fourteenth Amendment." (Motion at 4.) On this same basis, they contend that individual County Defendants Maas and May are entitled to qualified immunity. Plaintiff concedes that under *Ward*, he, as a sibling, lacks standing to assert a Fourteenth

---

[2] The County Defendants do not dispute that the "under color of state law" requirement is satisfied.

4

Amendment claim for loss of familial association. However, plaintiff argues that his claims actually stem from a "a sibling's rights to be free from the government's creation of danger and failure to protect foster children as proscribed by the Fourteenth Amendment, [and] invasion of a family member's right to association under the First Amendment." (Opposition at 1.) While not the model of clarity, the Court evaluates the complaint and addresses plaintiff's asserted rights in turn, and in a light most favorable to plaintiff.[3]

### A. First Cause of Action: Violation of Plaintiff's Fourteenth Amendment Rights to be Free from State-Created Danger and to Minimally Adequate Care

Plaintiff appears to clarify that his first cause of action is based on both a danger-creation theory of Fourteenth Amendment liability *and* a special-relationship theory. (Opposition at 5.) With respect to the former, the County Defendants argue that "[t]he essence of Plaintiff's claim is for the loss of a sibling relationship, which is simply not cognizable under the Fourteenth Amendment." (Motion at 4.) The Court disagrees with this characterization of plaintiff's Fourteenth Amendment claim and finds that plaintiff has adequately pleaded both danger-creation and special-relationship theories of Fourteenth Amendment liability.

As a preliminary matter, the state generally does not have an obligation to protect citizens from private harm. *See DeShaney v. Winnebago Dep't of Soc. Servs.*, 489 U.S. 189, 195–96 (1989); *see also Patel v. Kent Sch. Dist.*, 648 F.3d 965, 972 (9th Cir. 2011) ("In that vein, the Fourteenth Amendment's Due Process Clause generally does not confer any affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests."). However, two exceptions to this general rule exist, both of which plaintiff claims apply: (1) when the state affirmatively places a plaintiff in danger by acting with "deliberate indifference" to a "known or obvious danger" ("state-created danger exception"), *see L.W. v.*

---

[3] The Court notes that individual County Defendant May is named as a party-defendant in her official capacity only, while individual County Defendant Maas is named as a party-defendant in both her individual *and* official capacities. (*See* Complaint ¶¶ 8, 9.) While the parties have not briefed the issue, and the Court takes no position on the matter in this Order, plaintiff should consider whether it is appropriate to name Maas and May in their official capacities, while simultaneously naming the County, before filing his amended complaint.

5

*Grubbs*, 92 F.3d 894, 900 (9th Cir. 1996); and (2) when a "special relationship" exists between the plaintiff and the state ("special-relationship exception"), *see DeShaney*, 489 U.S. at 198–202. If either exception applies, the state's omission or failure to protect may give rise to a Section 1983 claim. *Patel*, 648 F.3d at 972.

### 1. *Right to be Free from State-Created Danger*

The state-created danger exception applies when there is "affirmative conduct on the part of the state in placing the plaintiff in danger," and the state acts with "deliberate indifference" to a "known or obvious danger." *Id*. at 974 (internal quotation marks omitted). Accordingly, courts have concluded that state child protective agencies expose children in their care to a danger they otherwise would not have faced when the agency makes poor placement decisions. For example, in *Tamas v. Department of Social & Health Services*, 630 F.3d 833 (9th Cir. 2010), the Ninth Circuit determined that by approving a foster child's adoption, the state "created a danger of molestation that [the child] would not have faced had the state adequately protected her as a result of referrals [reporting her foster father's physical and sexual abuse]." *Id*. at 843.

Here, the complaint alleges, *inter alia* that:

> Defendants' misconduct deprived [J.P.] (and his sister) of Fourteenth Amendment rights by affirmatively placing, deciding, or recommending that [J.P] (and [his sister]) continue to be placed in Moore's foster-care home, without engaging in any necessary acts to protect these foster siblings from future harm after [M.M.] ingested methamphetamine on 10/3/15. Defendants' misconduct resulted in [J.P] (and [M.M.]) living with a foreseeable and significant risk of danger they otherwise would not have faced—that [J.P.] or his sister would die of a methamphetamine overdose.

(Complaint ¶ 82.) Citing this paragraph of the complaint, the County Defendants argue that "[t]here are no facts indicating the Plaintiff personally suffered any abuse or neglect in the subject foster home, and in fact, he did not." (Dkt. No. 24 at 2 ("Reply").) The County Defendants are correct that the complaint is devoid of any allegations that *plaintiff* ingested methamphetamine or suffered any physical injury. However, there can be no serious dispute that, taking the allegations as true, plaintiff was exposed to a danger he would not have faced had Maas and/or May removed him and his sister from their foster home, namely "expos[ure] to methamphetamine and its toxic effects including the possibility of death." (Complaint ¶ 62.) The County Defendants' efforts to

argue otherwise are not well taken.

In order for the state-created danger exception to apply, plaintiff must additionally plead that "state officials . . . act[ed] with such deliberate indifference to the liberty interest that their actions 'shock the conscience.'" *Tamas*, 630 F.3d at 844 (quoting *Brittan v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2006)). Conduct that "shocks the conscience" is "deliberate indifference to a known, or so obvious as to imply knowledge of, danger." *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1064 (9th Cir. 2006) (internal quotation marks omitted). In *Tamas*, the Ninth Circuit held:

> [T]he deliberate indifference standard, as applied to foster children, requires a showing of an objectively substantial risk of harm and a showing that officials were subjectively aware of facts from which an inference could be drawn that a substantial risk of serious harm existed and that either the official actually drew that inference or that a reasonable official would have been compelled to draw that inference. . . . [T]he subjective component may be inferred from the fact that he risk of harm is obvious.

630 F.3d at 845 (internal quotation marks and citations omitted); *see also Henry A. v. Willden*, 678 F.3d 991, 1001 (9th Cir. 2012) ("[A] foster child's due process rights are violated when a state official exhibits deliberate indifference to a child's serious medical needs; to suspected physical abuse in a foster home; and to suspected sexual abuse in a foster home.").

Viewing the complaint in a light most favorable to plaintiff, the Court finds that plaintiff adequately pleads facts that, if true, would establish that individual County Defendants Maas and May acted with deliberate indifference to a substantial risk of harm to plaintiff. For example, plaintiff alleges that prior to M.M.'s death, M.M. was "hospitaliz[ed] for ingesting methamphetamine while in the exclusive care and custody of the *same foster parent* [as plaintiff's] for the previous four days." (*Id*. ¶ 81 (emphasis supplied).) Moreover, plaintiff alleges: "Defendants were subjectively aware of these facts from which an inference could be drawn that a substantial risk of harm existed. Either they drew that inference or would have been compelled to draw that inference." (*Id*.) According to plaintiff, despite being "on constructive notice about the details of 10/3/15, and the likelihood narcotics would again be available for the *foster siblings* to ingest" (*id*. ¶ 35 (emphasis supplied)), the County Defendants failed to inform the Dependency Court of facts regarding M.M.'s methamphetamine exposure (*id*. ¶ 40). Moreover, the County

7

Defendants allegedly "failed to make any Emergency Referral Protocol assessment" despite receiving numerous abuse or neglect referrals. (*Id*. ¶ 52.) In light of these allegations, the Court concludes that plaintiff has adequately pleaded a danger-creation theory of Fourteenth Amendment liability.

### 2. *Right to Minimally Adequate Care*

With respect to the special-relationship exception to the general rule that the state does not have a responsibility to protect the liberty of its citizens against invasion by private actors, the Constitution imposes upon the state a duty to assume some responsibility for the safety and general wellbeing of a person who is taken into its custody and held there against his will:

> [W]hen the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the . . . Due Process Clause.

*DeShaney*, 489 U.S. at 200 (citing *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976); *Youngberg v. Romeo*, 457 U.S. 307, 315–17 (1982)). This affirmative duty to protect arises from the state's restraint of the individual's freedom to act on his own behalf, not from its failure to act to protect his liberty interests against harms inflicted by other means. *See id*. This special relationship terminates when the individual is no longer in the state's custody. *See id*. at 200–01 (where state briefly took custody of a child from his birth father to investigate alleged abuse, and the child was later severely beaten by his father, Supreme Court held special-relationship exception did not apply because the child was no longer in the state's custody).

Here, plaintiff's allegations establish that he was in the state's custody during the time period in which his sister ingested methamphetamine on two separate occasions, the latter of which resulted in her death. Accordingly, the Court concludes that plaintiff adequately pleads a special-relationship theory of Fourteenth Amendment liability.[4]

---

[4] The County Defendants do not assert a qualified immunity defense with respect to plaintiff's Fourteenth Amendment claim based on his rights to be free from the government's creation of danger and to minimally adequately care.

8

## B. Second Cause of Action: Violation of Plaintiff's First Amendment Right to Familial Association

Plaintiff appears to clarify that his First Amendment claims are not based on freedom of expressive association, but rather on his right to *familial association*.[5] The Court proceeds with its analysis of plaintiff's First Amendment claim accordingly.[6]

Recently, the Ninth Circuit addressed "the constitutional right to familial association" in the context of a parent-child relationship and a hospital's refusal to release the latter. *Keates v. Koile*, 883 F.3d 1228, 1235 (9th Cir. 2018). Relevant here, the Ninth Circuit reiterated the well-established principle that the First Amendment protects "family relationships, that presuppose deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life." *Id.* (quoting *Lee v. City of L.A.*, 250 F.3d 668, 685 (9th Cir. 2001) (second internal quotation marks and citation omitted). The Supreme Court articulated this right over thirty years ago in *Roberts v. United States Jaycees*, 468 U.S. 609 (1984), which found that protecting intimate relations "from unwarranted state interference" was necessary to safeguard "the ability independently to define one's identity that is central to the concept of liberty." *Id.* at

---

[5] To the extent plaintiff relies on *Trujillo v. Board of County Commissioners of the County of Santa Fe*, 768 F.2d 1186 (10th Cir. 1985) to argue that he has a viable First Amendment expressive association claim (*see* Opposition at 6), this reliance is misplaced because *Trujillo* examined the *Fourteenth Amendment* right to freedom of *intimate* association between siblings, which the Ninth Circuit expressly rejected in *Ward*.

[6] In contrast to plaintiff's complaint (*see ¶¶* 92–97), plaintiff's opposition makes no reference to freedom of expressive association under the *Fourteenth Amendment* (*see* Opposition at 3–5). Thus, consistent with the caption page of the complaint, the Court interprets plaintiff's Third Cause of Action as an expressive association claim brought under the First Amendment. As to that claim, plaintiff does not appear to oppose its dismissal, and his non-opposition is well-advised. The Supreme Court has recognized under the First Amendment "a right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." *Roberts v. United States Jaycees*, 489 U.S. at 200, 618 (1984); *see also IDK v. Clark Cty.*, 836 F.2d 1185, 1192 (9th Cir. 1988) ("The first amendment's freedom of association protects groups whose activities are explicitly stated in the amendment: speaking, worshipping, and petitioning the government.") Plaintiff has not attempted to state a proper claim under the First Amendment based on freedom of expressive association, and from his opposition it is apparent he does not seek to do so. Moreover, while the Court recognizes that "a single association may have intimate and expressive features," *IDK*, 836 F.2d at 1192, plaintiff's claims for deprivation of association in this case appear limited to intimate association (specifically, familial association). Accordingly, the County Defendants' motion to dismiss plaintiff's third cause of action is **GRANTED**.

619. Shortly thereafter, the Supreme Court reconfirmed that "the First Amendment protects . . . family relationships." *Board of Dirs. v. Rotary Club*, 481 U.S. 537, 545 (1987). In light of this and other case law, the Ninth Circuit in *Keates* acknowledged, "we have held that claims under both the First and Fourteenth Amendment for unwarranted interference with the right to familial association could survive a motion to dismiss." *Keates*, 883 F.3d at 1236 (citing *Lee*, 250 F.3d at 686).

The County Defendants' reliance on *Ward* to argue that plaintiff fails to plead a cognizable claim for violation of association is thus misplaced as *Ward* did not address the First Amendment. There, the Ninth Circuit held that siblings do not possess a liberty interest in their siblings' companionship under the *Fourteenth Amendment substantive due process clause*. 967 F.2d at 284. The County Defendants have not shown that the principle enunciated in *Ward* limits the "familial association" right previously articulated under the First Amendment. Indeed, a number of California district courts have determined that it does not. *See, e.g.*, *Mann v. City of Sacramento*, No. 2:17-01201 WBS DB, 2017 U.S. Dist. LEXIS 152383, at *3 (E.D. Cal. Sept. 19, 2017) (in case brought by decedent's siblings, court acknowledged *Ward* but declined to conclude "as a matter of law that plaintiffs do not have standing to bring their § 1983 claim for deprivation of their First Amendment right of association with decedent"); *Kaur v. City of Lodi*, No. 2:14-cv-828-GEB-AC, 2014 WL 3889976, at *7 (E.D. Cal. Aug. 7, 2014) (declining to apply *Ward* to preclude siblings from pursuing claims for violation of association under the First Amendment); *Graham v. Cty. of L.A.*, No. CV 10-05059 DDP (Ex), 2011 WL 3754749, at *2 (C.D. Cal. Aug. 25, 2011) (noting in light of *Ward* that fiancé of decedent did "not bring a 14th Amendment companionship claim" and concluding that her relationship with decedent "was sufficiently personal and intimate to merit the protection of the First Amendment"). Nor have the County Defendants cited any controlling authority that contradicts the cases discussed in *Keates*, noted above.

Plaintiff alleges:

> Defendants were deliberately indifferent to plaintiff's right of association. An objective substantial risk of harm is exemplified by a five-old's [sic] almost three-year old sister requiring hospitalization for ingesting methamphetamine while in

10

the exclusive care and custody of the same foster parent for the previous four days. Defendants were subjectively aware of these facts from which an inference can be drawn that a substantial risk of serious harm existed. Either they drew the inference or would have been compelled to draw that inference.

(Complaint ¶¶ 89, 95.) Moreover, plaintiff alleges generally that rather than comply with various mandates and duties to assess the emergency report that M.M. had ingested methamphetamine, or investigate it, or take any immediate steps to prevent further harm, Maas and May did nothing to prevent M.M.'s foreseeable death. (*Id.* ¶¶ 3, 5, 8, 9, 44, 46, 49, 51, 52, 54, 55, 60–63.) Assuming the truth of these allegations and construing them in favor of plaintiff, the Court finds that plaintiff has adequately alleged that individual County Defendants Maas' and May's alleged misconduct constituted an "unwarranted interference" with plaintiff's relationship with his sister. *Keates*, 883 F.3d at 1236; *cf. Wittman v. Saenz*, 108 F. App'x 548, at 549–50 (9th Cir. 2004) (citing *Jaycees* and *Board of Directors*, court determined "First Amendment right of association extends to individuals involved in an intimate relationship, such as fiancés" and, thus, district court erred in dismissing complaint for failure to state a claim).[7]

Accordingly, the County Defendants' reliance on *Ward* to argue that Maas and May are entitled to qualified immunity because "siblings do not have a constitutionally protected liberty interest in familial association" is unavailing. (Motion at 6; *see also* Reply at 5.) Further, the alternative argument, that "[t]here was absolutely no authority or precedent in existence in 2015, or even now . . . clearly establishing that right" under the First Amendment, *see* Motion at 7, similarly fails. As noted, the Supreme Court articulated the right at issue in 1984. The Supreme Court does not "require a case directly on point" for the law to be clearly established, but "existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741. "[Q]ualified immunity operates 'to ensure that before they are subjected to suit,

---

[7] Of note, plaintiff describes *Wittman* as "affirming [the] right to associate with one's fiancé was clearly established." (Opposition at 6.) However, the Ninth Circuit in *Wittman* held the exact opposite: "Although, as noted above, Wittman has alleged a violation of his First Amendment right to freely associate with his fiancé, that right was *not* clearly established such that a reasonable board member would have known that his or her alleged acts and omissions would violate Wittman's right to freely associate with his fiancé." *Wittman*, 108 F. App'x at 551 (emphasis supplied).

11

officers are on notice their conduct is *unlawful*.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)) (emphasis supplied).

As early as 1984, the Supreme Court in *Jaycees* emphasized that the First Amendment protects "*[f]amily relationships*, [which] by their nature, involve deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life." 468 U.S. at 619–20 (emphasis supplied); *see also Board of Dirs.*, 481 U.S. at 545. In light of *Jaycees*, this Court finds that the relationship between siblings falls squarely within the articulated right such that state officials should be found on notice of the same. *See, e.g., Garcia-Mejia v. Gilkey*, No. 1:07-cv-00783-LJO-GSA (PC), 2009 WL 80411, at *3–4 (E.D. Cal. Jan. 13. 2009) (citing *Board of Directors* and *Jaycees* and concluding "[p]laintiff has a fundamental liberty interest in his relationship with his brother"). This case does not present a remotely novel proposition. Even if it did by virtue of the fact that it involves a sibling relationship, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Pelzer*, 536 U.S. at 741. Accordingly, the County Defendants' assertion of the qualified immunity defense fails.[8]

### C. Claim for Injunctive Relief

The County Defendants also move to dismiss plaintiff's claim for injunctive relief on the grounds that (i) plaintiff has not established that he is threatened with a real and immediate future

---

[8] As the Ninth Circuit reiterated in *Keates*, the Court's "denial of qualified immunity at this stage of the proceedings does not mean that the case must go to trial." 883 F.3d at 1240. Once an evidentiary record has been developed through discovery, defendants will be free to move for summary judgment based on qualified immunity. *Id.*

With respect to plaintiff's municipal liability claims, the County Defendants merely argue that the "fact" that "siblings simply do not have a protected liberty interest in familial association . . . bars" such claims. (Motion at 5.) Because the Court has determined that plaintiff has a First Amendment right to familial association, the Court **DENIES** the County Defendants' motion to dismiss as to plaintiff's municipal liability claims on the basis asserted. However, the Court **DISMISSES WITH PREJUDICE** plaintiff's claims under Section 1983 for municipal liability to the extent they are based on plaintiff's alleged Fourteenth Amendment right to intimate association or plaintiff's alleged First Amendment right to expressive association. (*See* supra note 6.)

12

injury by the County; and (ii) plaintiff's request for injunctive relief is impermissibly vague and overbroad. The Court agrees that plaintiff's claim for injunctive relief should be dismissed.

To have standing for injunctive relief under Section 1983, a plaintiff must allege that he is likely to suffer future injury from the alleged misconduct by the defendants. *See City of L.A. v. Lyons*, 461 U.S. 95, 105, 110 (1983). The reasonableness of a plaintiff's apprehension is dependent upon the likelihood of a recurrence of the allegedly unlawful conduct. *Id.* at 107 n.8. Moreover, while "[a] district court has considerable discretion in fashioning suitable relief and defining the terms of an injunction," *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991), "[t]here are limitations on this discretion; an injunction must be narrowly tailored to give only the relief to which plaintiffs are entitled," *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 558 (9th Cir. 1990). "Injunctive relief . . . must be tailored to remedy the specific harm alleged. An overbroad injunction is an abuse of discretion." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1140 (9th Cir. 2009) (internal quotation marks and citations omitted).

Here, plaintiff seeks "injunctive or declaratory relief as necessary to ensure ALAMEDA COUNTY remedy [sic] the unlawful practices described in this complaint." (Complaint ¶ 119 (emphasis in original).) Plaintiff further seeks "injunctive or declaratory relief requiring ALAMEDA COUNTY to develop, implement, and, enforce systems to effectively coordinate and ensure a properly trained social worker timely respond [sic] to all referrals/reports of abuse or neglect against children in ALAMEDA COUNTY's custody." (*Id.* ¶ 120 (emphasis in original).) However, the complaint is inconsistent as to whether plaintiff remains in the foster care system such that he "will again be wronged in a similar way." *Lyons*, 461 U.S. at 111.[9] Thus, plaintiff has failed to allege facts to show he has standing to seek injunctive relief. Moreover, plaintiff's claim is overbroad as this is not a class action, and plaintiff has not alleged that he has any other

---

[9] *Compare* Complaint ¶ 76 ("Plaintiff, through his Guardian ad Litem, has retained private counsel to represent her *adoptive son* [J.P.] in this matter" (emphasis supplied)) *with* Complaint ¶ 6 ("At all relevant times, [J.P] *was and is* a *dependent child* under the jurisdiction of the Alameda County Juvenile Court and is *placed in a foster care home*" (emphasis supplied)) *and* Complaint ¶ 116 ("[J.P.] *is* a *dependent foster child* in the legal custody of ALAMEDA COUNTY who *resides in a foster home*" (emphasis supplied)).

13

siblings in the foster care system such that any unconstitutional policies or practices could cause the same or similar injury in the future. Accordingly, the Court **GRANTS WITH LEAVE TO AMEND** the County Defendants' motion to dismiss plaintiff's seventh cause of action for injunctive relief.

## IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART AND DENIES IN PART** the County Defendants' motion to dismiss as follows:

The Court **DENIES** the County Defendants' motion as to: (i) plaintiff's claim under Section 1983 for violation of his Fourteenth Amendment rights to be free from state-created danger and to minimally adequate care; (ii) plaintiff's claim under Section 1983 for violation of his First Amendment right to familial association; and (iii) plaintiff's corresponding municipal liability claims under Section 1983.

The Court **GRANTS WITHOUT LEAVE TO AMEND** the County Defendants' motion as to: (i) plaintiff's claim under Section 1983 for violation of his Fourteenth Amendment right to intimate association; and (ii) plaintiff's claim under Section 1983 for violation of his First Amendment right to expressive association.[10] Accordingly, the Court **DISMISSES WITH PREJUDICE** plaintiff's claims under Section 1983 for municipal liability to the extent they are based on violation of these two alleged rights.[11]

The Court **GRANTS WITH LEAVE TO AMEND** the County Defendants' motion as to plaintiff's seventh cause of action for injunctive relief.

Plaintiff must amend his complaint by no later than **May 15, 2018**.[12] Defendants must respond within **21 days** of filing.

\\

\\

---

[10] *See supra* note 6.

[11] *See supra* note 8.

[12] The parties are reminded that all future filings must comply with Federal Rule of Civil Procedure 5.2(a).

14

This Order terminates Docket Number 21.

**IT IS SO ORDERED.**

Dated: April 24, 2018

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**