Law Offices of
**MATHENY SEARS LINKERT & JAIME LLP**
RONALD E. ENABNIT, ESQ. (SBN 138062)
3638 American River Drive
Sacramento, California 95864
Telephone: (916) 978-3434
Facsimile: (916) 978-3430
renabnit@mathenysears.com

Attorneys for Defendant TRIAD FAMILY SERVICES

LAW OFFICES OF
MATHENY SEARS LINKERT & JAIME, LLP
3638 AMERICAN RIVER DRIVE
SACRAMENTO, CALIFORNIA 95864

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

J. P., by and through his Guardian ad Litem, SHANNON VILLANUEVA

Plaintiffs,

v.

COUNTY OF ALAMEDA, DIANE DAVIS MAAS, SUE MAY, TRIAD FAMILY SERVICES, MARIA REFUGIO MOORE, and DOES 1-30, inclusive,

Defendants.

Case No. 4:17-cv-05679-YGR (SK)

**DEFENDANT TRIAD FAMILY SERVICES' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

Date: June 18, 2019
Time: 2:00 p.m.
Place.: Courtroom 1 – 4th Floor
Oakland Courthouse
1301 Clay Street, Oakland, CA
Judge: Hon. Yvonne Gonzalez Rogers

Complaint filed: October 2, 2017
Trial Date: April 29, 2019

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... ii
NOTICE OF MOTION AND MOTION ..... 1
STATEMENT OF RELIEF SOUGHT ..... 1
ISSUES TO BE DECIDED ..... 1
MEMORANDUM OF POINTS AND AUTHORITIES ..... 2
I. INTRODUCTION ..... 2
II. STATEMENT OF FACTS ..... 2
III. LEGAL DISCUSSION ..... 4
A. LEGAL STANDARDS FOR SUMMARY JUDGMENT ..... 4
B. PRIVATE ENTITIES ARE GENERALLY NOT STATE ACTORS FOR PURPOSES OF 42 U.S.C. § 1983 LIABILITY ..... 6
C. PUBLIC FUNCTION ..... 7
D. JOINT ACTION ..... 12
E. COMPULSION TEST ..... 13
F. GOVERNMENTAL NEXUS ..... 14
G. PLAINTIFF'S NEGLIGENCE CLAIM IS WITHOUT MERIT ..... 16
IV. CONCLUSION ..... 18

LAW OFFICES OF MATHENY SEARS LINKERT & JAIME LLP
3638 AMERICAN RIVER DRIVE
SACRAMENTO, CALIFORNIA 95853-4711

LAW OFFICES OF
MATHENY SEARS LINKERT & JAIME LLP
3638 AMERICAN RIVER DRIVE
SACRAMENTO, CALIFORNIA 95853-4711

# TABLE OF AUTHORITIES

**Federal Cases**

*Am. Title Ins. Co. v. Lacelaw Corp., 861* F.2d. 224, 226 (9thCir. 1988*)* .................................. 5

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-248 (1986) ........................................ 4, 5

*Blum v. Yaretsky,* 457 U.S. 991, 1004 (1982) ................................................................. 10

*Burgess v. Superior Court (1992)* 2 Cal.4th 1064 ............................................................. 17

*Carmen v. San Francisco Sch. Dist*., 237 F.3d 1026, 1031 (9th Cir. 2001)........................ 4. 5

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)...................................................................... 4

*Dahn v. Adoption Alliance,* 164 F.Supp.3d 1294, 1303-1304 (D. Colo. 2016) ...................... 8

*D. B. v. Brewer*, 2017 U.S. Dist LEXIS 98656, 2017 WL 2766437 (C.D. CA, June 26, 2017) ........................................................................................ 12, 13

*E.J. v. United States*, 2013 U.S. Dist. LEXIS 163185, *6-8 ..................................................

*Flagg Bros. Inc. v. Brooks,* 436 U.S. 149, 158, 178 (1978) ................................................... 7

*Florer v. Congregation Pidyon Shevuyim, N.A*., 639 F.3d 916, 925-926 (9th Cir. 2011) ....... 6

*Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002) ......................................................... 6, 13

*Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir.2007) ...................................... 5

*Gilbreath v. Bach*, 2017 U.S. Dist. LEXIS 188346, at *7 (C.D. CA., October 11, 2017)...... 8

*Jackson v. Metropolitan Edison Co*., 419 U.S. 345, 351, 95 S.Ct. 449, 459 (1974)............. 15

*Johnson v. Knowles,* 113 F.3d. 1114, 1118 (9th Cir. 1997) .................................................. 7

*Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) .......................................................... 5

*Kirtley v. Rainey, 326 F.3d 1088, 1092* (9th Cir. 2003)........................................... 7, 8, 13, 14

*Lee v. Katz,* 276 F.3d. 550, 554-555 (9th Cir. (internal quotation marks omitted) 2002)........ 7

*Mabe v. San Bernadino County Dept. of Social Services*, 237 F.3d 1101, 1109, n.3 (9th Cir. 2001)........................................................................................................ 11

*Mark v. Borough of Hatboro,* 51 F.3d. 1137 (3rd Cir. 1995)................................................. 7

*Martin v. United States*, 984 F.2d 1033, 1035-1036 (9th Circuit 1993) ............................... 17

*Martinez v. County of Kern,* 2007 U.S. Dist LEXIS 30150, 2007 WL 1079937, Headnote 5 (E.D. Cal. Apr. 9, 2007) ........................................ 6, 8, 9, 10, 12, 13, 14, 15

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574 (1986)...................... 5

*Milburn v. Anne Arundel Dept. of Soc. Servs.*, 871 F.2d 474, 479 (4th Cir. 1989)................. 7

*Monell v. Dep't. of Social Services*, 436 U.S. 658, 690 (1978)........................................ 6, 12

*Murrey v. United States,* 73 F.3d 1448, 1455 (7th Cir. 1996)................................................. 5

*Parks Sch. Of Bus., Inc. v. Symington*, 51 F.3d. 1480, 1486 (9th Cir. 1995)........................ 12

*Price v. Hawaii*, 939 F.2d.702, 707-08 (9th Circ. 1991)........................................................ 6

*Rayburn v. Hogue,* 241 F.3d 1341, 1348 (11th Cir. 2001)................................................... 11

*Robert S. v. Stetson School, Inc.* 256 F.3d 159, 168, n. 9 (3rd Cir. 2001)............................ 11

*Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999)................ 6, 13

*West v. Atkins* 487 U.S. 42, 53 (1988)................................................................................. 6

**State Cases**

*Bird v. Saenz* (2002) 28 Cal. 4th 910.................................................................................. 16

*Dillon v. Legg* (1968) 68 Cal. 2d 728.................................................................................. 16

*Huggins v. Longs Drugs* (1993) 6 Cal. 4th 124................................................................... 17

*Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.* (1989) 48 Cal. 3d 583 ................ 17

*Molien v. Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916 ............................................ 17

*Ragland v. U.S. Bank National Assn.* (2012) 209 Cal. App. 4th 182................................... 17

*Steven F. v. Anaheim Union High School* (2003) 112 Cal. App. 4th 904 ........................... 18

*Thing v. La Chusa* (1989) 48 Cal. 3d. 644 ........................................................................ 16

**Federal Statutes**

42 U.S.C. § 1983 ............................................................................................... 1, 2, 6, 9

FRCP 56 ............................................................................................................... 1

FRCP 56(a)............................................................................................................ 4

FRCP 56(c)(1). ....................................................................................................... 5

FRCP 56(e)(2) ........................................................................................................ 5

FRCP 56(e)(3) ........................................................................................................ 5

**California Statutes**

California Government Code

§ 12586 ................................................................................................................. 2

LAW OFFICES OF MATHENY SEARS LINKERT & JAIME LLP 3638 AMERICAN RIVER DRIVE SACRAMENTO, CALIFORNIA 95853-4711

LAW OFFICES OF
MATHENY SEARS LINKERT & JAIME LLP
3638 AMERICAN RIVER DRIVE
SACRAMENTO, CALIFORNIA 95853-4711

§ 12587 ........ 2

California Health & Safety Code

§ 1502 ........ 3, 9

§ 1506 ........ 3

§ 1530 ........ 3

California Internal Revenue Code

§ 501(c)(3) ........ 2, 6

California Penal Code

§ 11165.7 ........ 11

California Welfare & Institutions Code

§ 281 ........ 7

§ 305 ........ 10, 15

§ 306 ........ 10, 15

§ 361.2 ........ 9

§§ 16000-16014 ........ 7

§ 16504 ........ 7

**Other Sources**

Cal. Code of Reg., Title 22, Div. 6, Chapter 8.6, §§ 88000 - 88087 ........ 3

Cal. Code of Reg., Title 22, Div. 6, Chapter 8.8, Art. 4, §§ 88000 to 88087 ........ 9

Cal. Code of Reg., Title 22, Division 6, Chapter 9.5, §§ 89200 to 89587.1 ........ 9

CACI Jury Instruction 1620 ........ 2, 17

CACI Jury Instruction 1621 ........ 2, 16

California Department of Social Services in the Manual of Policies and Procedure ........ 7, 9

LAW OFFICES OF
MATHENY SEARS LINKERT & JAIME LLP
3638 AMERICAN RIVER DRIVE
SACRAMENTO, CALIFORNIA 95864

## NOTICE OF MOTION AND MOTION

TO PLAINTIFF J.P. AND HIS GUARDIAN AD LITEM SHANNON VILLANUEVA:

PLEASE TAKE NOTICE that on June 18, 2019, at 2:00 p.m., Defendant Triad Family Services ("Triad) will and hereby does move, pursuant to Federal Rule of Civil Procedure § 56 for summary judgment, or in the alternative for partial summary judgment of claims, in its favor on Plaintiff's First Amended Complaint in this action.

This motion is based on this Notice of Motion and Motion and the accompanying Memorandum of Points and Authorities, the Declarations of Ronald Enabnit and Nancy Reagh, the Request for Judicial Notice, the arguments of counsel, all pleadings, records and papers on file herein, and such other matters that may be presented to the court.

## STATEMENT OF RELIEF SOUGHT

Triad respectfully requests that this Court enter summary judgment in Triad's favor as to the entirety of Plaintiff's First Amended Complaint, or in the alternative, grant Triad's motion for partial summary judgment of claims.

## ISSUES TO BE DECIDED

Plaintiff J.P., by and through his guardian ad litem Shannon Villanueva, claims that Triad is liable to him for damages he has suffered because of the death of his sister, M.M. Plaintiff J.P. and M.M. were foster children residing in a foster home operated by defendant Maria Moore. Specifically, plaintiff alleges in his third and fourth causes of action that Triad is a state actor and that Triad has municipal liability under 42 U.S.C. § 1983. Plaintiff further alleges in his sixth cause of action that Triad negligently performed numerous services as a foster family agency retained by defendant Alameda County, and that the negligently performed services were a substantial factor in causing his damages. The following issues are raised by this motion:

1. Whether Triad is a state actor, under any theory of liability;
2. Whether Plaintiff J.P.'s negligence cause of action is without merit.

///

///

///

LAW OFFICES OF
MATHENY SEARS LINKERT & JAIME LLP
3638 AMERICAN RIVER DRIVE
SACRAMENTO, CALIFORNIA 95864

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff J.P. alleges in his third and fourth causes of action (*Monell* claims) that Triad is a state actor and is liable under 42 U.S.C. § 1983. Triad is not a public entity. Triad is a nonprofit corporation, licensed by the State of California as a foster family agency. A foster family agency certifies foster homes and supports the placement of children in foster homes. Foster family agencies may contract directly with parents to place children in foster homes which it has certified. Foster family agencies also contract with counties for the placement of children in their certified foster homes, but the duties of foster family agencies are clearly distinct and separate from those of the counties regarding the oversight, responsibilities, and scope of services they provide to children in foster care. Case law in the Ninth Circuit has held that foster family agencies are not state actors for purposes of liability under 42 U.S.C. § 1983, and the relationship between Triad and Alameda County was the typical relationship between a foster family agency and a county child and family services department. Plaintiff's allegations that Triad's conduct both fell below the applicable standard of care and violated his civil rights have no bearing on the issue of whether Triad was a state actor.

Plaintiff J.P. did not suffer a physical injury because of the negligence he alleges in his First Amended Complaint. Accordingly, plaintiff's negligence claim against Triad is limited to recovery for his emotional distress damages. Plaintiff was not, however a "direct victim," nor was he a "bystander," according to settled case law and as is set stated in California CACI jury instruction numbers 1620 and 1621. Plaintiff's negligence claim, therefore, is without merit.

Triad's motion for summary judgment should be granted in its entirety

## II. STATEMENT OF FACTS

In 2015 and at all other times relevant to plaintiff's First Amended Complaint, Triad was a California nonprofit corporation, pursuant to Internal Revenue Code § 501(c)(3) and California Government Code §§ 12586 and 12587. (SSUF No.1 – Issue No. 1). In 2015 and at all other times relevant to plaintiff's First Amended Complaint, Triad was licensed by the state of California to act as a foster family agency and Triad contracted with counties, including Alameda County for

LAW OFFICES OF
MATHENY SEARS LINKERT & JAIME LLP
3638 AMERICAN RIVER DRIVE
SACRAMENTO, CALIFORNIA 95864

placement of children in homes that certified by Triad. As a foster family agency, Triad was regulated by the state of California, pursuant to California Health & Safety Code §§ 1502, 1506, 1530 and Cal. Code of Regulations, Title 22, Division 6, Chapter 8.6, §§ 88000 through 88087. (SSUF No. 2 – Issue No. 1). Foster Family Agencies, such as Triad, can contract with parents, without the involvement of county social service agencies, for the placement of children in foster homes certified by foster family agencies. (SSUF No. 3 – Issue No. 1).

Triad certified the Maria Refugio Moore home on September 9, 2015, and Alameda County approved Maria Refugio Moore's home to receive placement of J.P. and M.M. (SSUF No. 4 – Issue No. 1). On September 30, 2015, Alameda County involuntarily removed then five-year-old J.P. and his almost three-year-old sister M.M. from their mother's custody pursuant to Welfare & Institutions Code §§ 305 and/or 306, based upon an allegation of abuse and neglect while they resided in their biological mother's home. (SSUF No. 5 – Issue No. 1). Sue May as Alameda County's "Placement Worker Representative" placed J.P. and M.M. in an out-of-county home through a contract between Alameda County and Triad. The Placement Agreement between Alameda County and Triad for M.M. and J.P. was signed on or about October 1, 2015. (SSUF No. 6 – Issue No. 1).

From September 30, 2015 to October 16, 2015, Maria Moore had physical custody, care and control of J.P. and M.M, but Alameda County retained legal custody of J.P. and M.M. (SSUF No. 8 - Issue No. 1). Triad made abuse or neglect referrals to Alameda County on 10/4/15, 10/5/16 and 10/6/16, because of M.M.'s hospitalization on 10/3/15. (SSUF No. 9 - Issue No. 1). On 10/6/15, the San Joaquin Human Services Agency (SJHSA) called the Department of Family & Child Services of Alameda County repeatedly, and requested a return call and, contacted a hotline to obtain a fax number for Alameda County. That same day SJHSA faxed its own Suspected Child Abuse Report regarding M.M.'s methamphetamine exposure. The SJHSA assessed the referral it received on 10/4/15 as requiring a response within ten days pursuant to a statewide Emergency Response Protocol. Alameda County was legally responsible for the direct supervision and services for M.M. and J.P. (SSUF No. 10 - Issue No. 1).

M. M. died on October 16, 2015 because of methamphetamine ingestion, but J. P. did not

observe M.M. ingest the methamphetamine which caused her death. (SSUF No. 1 – Issue No. 2). Plaintiff J.P. suffered extreme emotional distress damages because of the drug exposure and death of his sister M.M. Plaintiff J.P. does not allege in his statement of damages that he suffered any bodily or physical injury, or that he ingested any drug at Maria Moore's foster home. (SSUF No.'s 2 and 3 - Issue No. 2,

Alameda County failed to conduct an investigation, obtain independent statements from any witnesses or residents in Moore's home, and to inspect the safety of the foster home. (SSUF No. 1 – Issue No. 1). Alameda County had mandatory duties to protect J.P. and M.M. to supervise and monitor the placement of J.P. and M.M. in a foster home. (SSUF No. 12 - Issue No.1). Alameda County had the ultimate responsibility and authority to ensure the safety and well-being of M.M. and J.P. (SSUF No. 7 - Issue No. 1).

LAW OFFICES OF
MATHENY SEARS LINKERT & JAIME LLP
3638 AMERICAN RIVER DRIVE
SACRAMENTO, CALIFORNIA 95864

## III. LEGAL DISCUSSION

### A. LEGAL STANDARDS FOR SUMMARY JUDGMENT

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a).

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. [¶] As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986).

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims ... , and ... we think it should be interpreted in a way that allows it to accomplish this purpose." *Celotex Corp. v. Catrett*, 477 U.S. 317,323-24 (1986). "The gist of a summary judgment motion is to require the adverse party to show that it has a claim or defense, and has evidence sufficient to allow a jury to find in its favor on that claim or defense." *Carmen v.*

*San Francisco Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001). When the nonmoving party bears the ultimate burden of proof at trial, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. If the moving party carries its initial burden, the nonmoving party must either: (a) cite to "particular parts of materials in the record" to show a genuine dispute of a material fact; or (b) show that the moving party's admissible evidence does not establish the absence of a genuine dispute. (Fed. R. Civ. Proc. 56(c)(1).) "Bald assertions that genuine issues of material fact exist are insufficient." *Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir.2007) (citation omitted); see *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574,586 (1986) (pointing to "some metaphysical doubt as to the material facts" does not suffice). The plaintiff's evidentiary showing must be substantial; "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249-250 (citations omitted). If the nonmoving party "fails to properly address another party's assertion of fact, ... the court may," *inter alia*: (a) treat the matter as undisputed (Fed. R. Civ. Proc. § 56(e)(2)); or (b) if the moving papers otherwise show the movant is entitled to summary judgment, grant the motion (Fed. R. Civ. Proc. § 56(e)(3)). The court is not obliged '"to scour the record in search of a genuine issue of triable fact.'" *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (internal citation omitted). Rather, the court should '"rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.'" *Id.*; see also *Carmen v. San Francisco Sch. Dist.*, 237 F.3d 1026 (9th Cir.2001) ("requiring the district court to search the entire record, even though the adverse party's response does not set out the specific facts or disclose where in the record the evidence for them can be found, is unfair" to the court and to litigants in other matters, and "is also profoundly unfair to the movant").

"Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding upon the party who made them." *Am. Title Ins. Co. v. Lacelaw Corp., 861* F.2d. 224, 226 (9th.Cir. 1988*)*. "A judicial admission trumps evidence…This is the basis

LAW OFFICES OF
MATHENY SEARS LINKERT & JAIME LLP
3638 AMERICAN RIVER DRIVE
SACRAMENTO, CALIFORNIA 95864

of the principle that a plaintiff can plead himself out of court." *Murrey v. United States,* 73 F.3d 1448, 1455 (7th Cir. 1996).

**B. PRIVATE ENTITIES ARE GENERALLY NOT STATE ACTORS FOR PURPOSES OF 42 U.S.C. § 1983 LIABILITY**

"[M]unicipalities and other local government units…[are] among those persons to whom §1983 applies." *Monell v. Dep't. of Social Services*, 436 U.S. 658, 690 (1978). Triad is not a public entity. Rather, it is an Internal Revenue Code § 501(c)(3) California nonprofit corporation, which acts as a foster family agency (FFA). "Only in rare circumstances can a private party be viewed as a state actor for section 1983 purposes." *Martinez v. County of Kern,* 2007 U.S. Dist LEXIS 30150, 2007 WL 1079937, Headnote 5 (E.D. Cal. Apr. 9, 2007). Courts "start with the presumption that private conduct does not constitute governmental action." *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999). Generally, private parties do not act under color of state law. See *Price v. Hawaii*, 939 F.2d.702, 707-08 (9th Circ. 1991). When a private party conspires with state officials to deprive others of constitutional rights, the private party acts under color of state law. See *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002). Plaintiff J.P. does not allege that Triad conspired with any state official.

Prison physicians who contract with prisons to provide medical services act under color of state law, because an inmate must rely on prison authorities to treat his or her medical needs. *West v. Atkins* 487 U.S. 42, 53 (1988). Prison chaplains who contract with prisons to provide religious materials and services to inmates are not state actors, however, because the state did not delegate to contract chaplains its obligation to provide reasonable opportunities to exercise religious freedom. Instead, one way in which the state fulfilled its responsibility was to hire contract chaplains. *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 925-926 (9th Cir. 2011).

These two prison cases are instructive in analyzing the relationship between Triad and Alameda County. In the same way that the Department of Corrections has the ultimate responsibility to provide medical care for inmates, Alameda County has the ultimate responsibility (and mandatory duties) to protect children in foster care, by monitoring and supervising their placement in a foster home. (SSUF No.'s 7, 8 and 12 – Issue No.1). One way, but not the only

LAW OFFICES OF
MATHENY SEARS LINKERT & JAIME LLP
3638 AMERICAN RIVER DRIVE
SACRAMENTO, CALIFORNIA 95864

LAW OFFICES OF
MATHENY SEARS LINKERT & JAIME LLP
3638 AMERICAN RIVER DRIVE
SACRAMENTO, CALIFORNIA 95864

way, that Alameda County attempted to provide some services to dependent children J.P. and M.M. was to enter into an agreement with Triad, through which Triad agreed to carry out certain specified tasks. (SSUF No.'s 6 and 7 – Issue No.1). Alameda County had separate and distinct duties from those of Triad, many of which are stated in the Placement Agency – Foster Family Agency Agreement, including the obligation to visit foster children on a monthly basis (SSUF No. 7 – Issue No.1) and to comply with the provisions of Welfare & Institutions Code §§ 281, 16000-16014 and 16504, and the California Department of Social Services in the Manual of Policies and Procedure.

Courts in the Ninth Circuit have applied the following four tests to determine whether a private entity has engaged in state action, for purposes of §1983 liability: 1) Public Function; 2) Joint Action; 3) Governmental Compulsion or Coercion; and 4) Governmental Nexus). Triad is not a state actor under any of these tests. *Kirtley v. Rainey, 326 F.3d 1088, 1092* (9th Cir. 2003).

**C. PUBLIC FUNCTION**

"Under the public function test, when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations." *Lee v. Katz,* 276 F.3d. 550, 554-555 (9th Cir. (internal quotation marks omitted) 2002). In *Lee,* a private corporation that leased a large open-air plaza (a public forum) from the City of Portland was held to be a state actor because it promulgated policies pertaining to free speech. Id. at 552-558. The regulation of free speech within a public forum is "quintessentially an exclusive and traditional public function." Id. at 556-557. Such is not the case with the role of foster family agencies regarding the monitoring of the care provided by foster parents to minors who have been adjudicated to be abused or neglected by their natural parents.

The "scope of the public function doctrine is carefully and narrowly defined." *Johnson v. Knowles,* 113 F.3d. 1114, 1118 (9th Cir. 1997). The scope of the public function test is relatively narrow and should be limited to those "rare instances where the State has ceded one of its 'exclusive' powers." *Flagg Bros. Inc. v. Brooks,* 436 U.S. 149, 158, 178 (1978). The public function test imposes a "rigorous standard," which is "rarely" satisfied. *Mark v. Borough of Hatboro,* 51 F.3d. 1137 (3rd Cir. 1995). The care of foster children is not traditionally the exclusive

LAW OFFICES OF
MATHENY SEARS LINKERT & JAIME LLP
3638 AMERICAN RIVER DRIVE
SACRAMENTO, CALIFORNIA 95864

prerogative of the state. *Milburn v. Anne Arundel Dept. of Soc. Servs.*, 871 F.2d 474, 479 (4th Cir. 1989).

Triad acknowledges that there is some case law from other circuits which have held that foster family agencies are state actors under certain circumstances. See *Dahn v. Adoption Alliance*, 164 F.Supp.3d 1294, 1303-1304 (D. Colo. 2016) for a review of those opinions. Such opinions are not binding, appear to be a minority view, are inconsistent with the holding in *Martinez v. County of Kern*, and are contrary to the guidance from the United States Supreme Court in *Flagg* that it is rare when the State has ceded one of its exclusive powers. The fact that Alameda County consulted with Triad regarding the home in which M.M. and J.P. were placed does not amount to Alameda County "ceding" its placement authority. Additionally, the fourteen duties reserved to Alameda County in its foster family agency agreement with Triad is further evidence that Alameda County did not "cede" its duties regarding the care and supervision of M.M. and J.P. to Triad.

The public function test requires proof that the function at issue is "both traditionally and exclusively governmental." *Kirtley*, 326 F.3d at 1093. In *Kirtley*, a guardian ad litem for a minor, who was state-appointed and state-compensated was held to not be a state actor. Triad is not unlike that guardian ad litem, inasmuch as they each work closely with government entities for the welfare of children and as advocates for children. Id. at 1092.

"Functions that have been traditionally classified as public under this doctrine include: "the administration of elections, the operation of a company town, eminent domain, peremptory challenges in jury selection, and in at least limited circumstances, the operation of a municipal park." *Gilbreath v. Bach*, 2017 U.S. Dist. LEXIS 188346, at *7 (C.D. CA., October 11, 2017). The ongoing monitoring of the care of children removed from the homes of their biological parents is neither a traditional, nor an exclusive, government function and is clearly unlike the public functions identified in the *Gilbreath* opinion. It is a historical fact that such children often resided in orphanages or other private residential or community-based settings, in which care was provided to them without the direct oversight of county social service agencies.

The question of whether a California nonprofit foster family agency (FFA) was a state actor was adjudicated in *Martinez v. County of Kern*, 2007 U.S. Dist. LEXIS 30150 (E.D. CA., April 9,

2007). In *Martinez,* the foster family agency was Moss Beach Homes (MBH). MBH located a foster home for infant FYM and his two siblings. FYM had been adjudicated a dependent of the Kern County Juvenile Court and was involuntarily removed from her parents. FYM died while in foster care and her parents sued MBH and County of Kern pursuant to 42 U.S.C. § 1983, for the deprivation of their familial relationship with FYM. Id. at *2-4. The court in *Martinez* applied the public function, joint action, governmental compulsion or coercion, and governmental nexus tests, and concluded that none of these tests were sufficient to characterize foster family agency MBH as a state actor. Id. at *11-27.

The *Martinez* court relied upon its review of California statutes and regulations in support of its decision that foster family agencies do not perform a public function. Health & Safety Code § 1502(4) defines foster family agencies as nonprofit entities that recruit, certify, train and provide professional support for foster parents, and that find homes or other places of placement of children for temporary or permanent care as an alternative to a group home. Although foster family agencies **certify** foster homes, counties **license** foster homes. California Code of Regulations, Title 22, Division 6, Chapter 9.5 (sections 89200 to 89587.1) and Manual of Policies and Procedures sections 31-445 describe the county foster home licensing procedure. California Code of Regulations, Title 22, Division 6, Chapter 8.8, Article 4 (sections 88000 to 88087) describes the procedure by which foster family agencies certify foster homes. The regulations pertaining to the certification and the licensing of foster homes are not the same. (SSUF No. 2 – Issue No.1). Moreover, the various and differing duties of county social service agencies and foster family agencies are stated in the standard placement agreement used in a case such as this (SSUF No. 7 – Issue No.1, Exhibit C to Shawn Nunn's deposition transcript).

The State does not **exclusively** provide the care for minors who have been adjudicated to be abused and neglected by their natural parents. Such minors may be placed in a variety of settings, including the approved home of a relative, the approved home of a nonrelative extended family member, a licensed foster home, with a foster family agency to be placed in a suitable home certified by the agency, a suitable licensed community care facility, a group home for children, or

LAW OFFICES OF
MATHENY SEARS LINKERT & JAIME LLP
3638 AMERICAN RIVER DRIVE
SACRAMENTO, CALIFORNIA 95864

a short-term residential therapeutic program. *Martinez at *14,* and Welfare & Institutions Code § 361.2.

Foster family agencies, therefore, do not provide a function which is exclusively reserved to the government when it assists in the care of children who have been removed by the state from the care and custody of their natural parents. Foster Family Agencies also may directly contract with parents for the placement of children in their certified foster homes, without any county social service agency involvement. (SSUF No. 3- Issue No.1). This fact further differentiates foster family agencies from county social service agencies.

Plaintiff's first amended complaint also differentiates the roles and duties of county social service agencies from those of foster family agencies. Foster family agencies are regulated by the state, as are countless other private nonprofit and for-profit corporations. (SSUF No. 2 – Issue No. 1). Mere regulation by the state is insufficient to transform a private actor into a state actor. *Blum v. Yaretsky,* 457 U.S. 991, 1004 (1982).

Plaintiff concedes that Alameda County, and not Triad, has the ultimate responsibility and authority to ensure the safety and well-being of dependent children which it has placed into foster care homes. (SSUF No. 7 – Issue No. 1). Plaintiff has conceded that Alameda County, not Triad, was legally responsible for the direct supervision and services of J.P. and M.M. (SSUF No. 10 – Issue No. 1). Plaintiff has also admitted that Alameda County was responsible for the assessment the risk of harm to M.M. following the multiple referrals which were made to it after M.M. initial hospitalization. (SSUF No. 11 – Issue No. 1). Thus, Alameda County did not "cede" its foster children duties to Triad.

As is discussed in the *Martinez* opinion, foster family agencies are not authorized to remove children involuntarily from the homes in which they lived with their natural parents. *Martinez* at *15-16. That authority is given to peace officers and county social workers. *Martinez* at *15, citing Welfare & Institutions Code §§ 305 and 306. While it is true that foster family agencies may remove a child from a foster home if the exceptional circumstance exists in which the child is in imminent risk of harm (See paragraph 9 to Exhibit C to Nunn's deposition, SSUF No. 7 – Issue No. 1), this authority is surely the same for any operator of a group harm or other residential or

LAW OFFICES OF MATHENY SEARS LINKERT & JAIME LLP 3638 AMERICAN RIVER DRIVE SACRAMENTO, CALIFORNIA 95864

community-based licensed facility which provides care for children. If this authority were sufficient to transform a private actor into a state actor, then all such nonprofit licensed child care/treatment facilities would be state actors in virtually all circumstances. See generally *Martinez* *15, citing to *Mabe v. San Bernadino County Dept. of Social Services*, 237 F.3d 1101, 1109, n.3 (9th Cir. 2001) (court-appointed caretakers not state actors); *Rayburn v. Hogue*, 241 F.3d 1341, 1348 (11th Cir, 2001) (foster parents not state actors); *Robert S. v. Stetson School, Inc.* 256 F.3d 159, 168, n. 9 (3rd Cir. 2001) (private boarding school not a state actor, even though it relied heavily upon government placements and funding and performed services that the state was obligated to provide).

The statutory duty (Penal Code section 11165.7) to protect a child from imminent harm (though reporting) applies to a great variety of mandated reporters who are private employees (employees at private schools, employees at private day camps, commercial film processor, clergy member, etc). This duty to protect children from harm does not transform these classes of persons into state actors.

Paragraph 53 of the First Amended Complaint alleges (with no reference to any statutes or regulations) that Triad served a public function because it certified foster homes. This is clearly not exclusively a government function, because this function is specifically designated by statute and regulation as a task to be performed by a nonprofit FFA corporation.

Paragraph 53 also alleges that Triad performed a public function because it placed children in foster homes. This is incorrect, because it was Alameda County, not Triad, that placed M.M. and J.P. in the Moore foster home. (SSUF No. 6 – Issue No.1). Triad also may place children in foster homes, without any governmental involvement. (SSUF No. 3 – Issue No. 1).

Plaintiff also alleges, without reference to any authority, that foster family agencies procure medical care and that this is a government function. This is incorrect. Many persons who are not state actors procure medical care for children in foster care, including foster parents. The contract between Alameda County and Triad does not impose any duty on Triad to procure medical care. The other duties referenced in Paragraph 53 include some tasks typically associated with foster family agencies; but that does not make them exclusively public functions.

LAW OFFICES OF MATHENY SEARS LINKERT & JAIME LLP 3638 AMERICAN RIVER DRIVE SACRAMENTO, CALIFORNIA 95864

Paragraph 53 incorrectly states (with no reference to a statue or regulations) that foster family agencies are tasked with investigation of complaints relating to abuse and neglect. Plaintiff concedes in paragraph 52 that such investigatory duties rest with Alameda County.

There is nothing about Triad's relationship with Alameda County, regarding the foster parenting services it was obligated to perform for M.M. and J.P., which makes this case different than any other standard relationship between a foster family agency and a county social service agency. While plaintiff may argue that Triad made mistakes in judgment which subject it to liability, those allegations are irrelevant to the public function aspect of the state actor question. The court in Martinez resolved this issue in favor of foster family agencies.

In *D. B. v. Brewer*, 2017 U.S. Dist LEXIS 98656, 2017 WL 2766437 (C.D. CA, June 26, 2017) the trial court also analyzed the public function issue as it applied to a foster family agency. In *D. B.*, the court declined to determine whether the foster family agency was a state actor under the public function test, because plaintiff failed to adequately state a *Monell* claim against the agency. *Id at *22-23.* Nothing in the *D.B.* opinion negated the effect of the ruling in *Martinez* that the foster family agency in that case did not perform a public function. In conclusion, Triad did not perform a public function in connection with the actions alleged against it in this litigation.

**D. JOINT ACTION**

The joint action test analyzes whether "the state has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity. This occurs when the state knowingly accepts the benefits of unconstitutional behavior." *Parks Sch. Of Bus., Inc. v. Symington*, 51 F.3d. 1480, 1486 (9th Cir. 1995). Alameda County could not possibly derive a benefit from the alleged unconstitutional conduct of Triad. Alameda County has a strong interest in ensuring that children in foster homes receive proper care, and it is implausible that it would insinuate itself into an agreement to place children in foster care at risk of harm.

Plaintiff's First Amended Complaint does not specifically allege "joint action," other than in the heading on section H at page 11. Paragraph 57 alleges that Alameda County "utilized TRIAD to solicit, investigate and train foster parents to certify them as foster parents to place foster children

LAW OFFICES OF MATHENY SEARS LINKERT & JAIME LLP
3638 AMERICAN RIVER DRIVE
SACRAMENTO, CALIFORNIA 95864

that are in the legal care and custody of ALAMEDA COUNTY, therefore benefitting the County by outsourcing, when on information and belief ALAMEDA COUNTY's staffing was insufficient." If one strains to construe Paragraph 57 as a joint action allegation, nothing in that paragraph even suggests that ALAMEDA COUNTY knowingly accepted the benefits of allegedly unconstitutional conduct on the part of Triad.

In *D.B. v. Brewer,* the court rejected the argument that a foster family agency should be held liable under the joint action test. *D.B.,* 2017 U.S. Dist. LEXIS at 23-25. In that case, the court concluded that plaintiff failed to allege that the foster family agency and the county had a common goal of violating plaintiffs' constitutional rights. The court commented that the Ninth Circuit "has been careful to require a substantial degree of cooperation before imposing civil liability for actions by private individuals that impinge on civil rights." *Id.*, citing to *Franklin v. Fox,* 312 F.3d at 445. The joint action test was also rejected in *Martinez* when applied to the conduct of a foster family agency. *Martinez v. County of Kern,* 2007 U.S. Dist LEXIS at *17-18.

Plaintiff does not allege any unusually close relationship between Alameda County and Triad, or any substantial degree of cooperation. If anything, plaintiff alleges that Alameda County failed to act closely with Triad regarding the circumstances of this case (see paragraphs 39-42 and 52 of the First Amended Complaint).

Triad clearly is not a state actor under the joint action test.

**E. COMPULSION TEST**

"The compulsion test considers whether the coercive influence or "significant encouragement" of the state effectively converts a private action into a government action." *Kirtley,* 326 F.3d. at 1095, citing to *Sutton*, 192 F. at 836-37. The *Sutton* opinion describes the development and application of the compulsion test. This test originated in segregation in private restaurant cases in which the government, not the private entity, was the defendant. The private restaurants were compelled to engage in unconstitutional practices because of the conduct of city governments.

As to private entity defendants, more is required than simply following a statute. *Sutton* at 839. Some additional nexus is required that makes it fair to deem the private entity a governmental

LAW OFFICES OF MATHENY SEARS LINKERT & JAIME LLP 3638 AMERICAN RIVER DRIVE SACRAMENTO, CALIFORNIA 95864

actor. One such example is when private defendants invoked the aid of state officials to use a state-created attachment procedure (without adequate due process.) Another example of when such a nexus was established is a private club sought the state's assistance in enforcing its racially discriminatory bylaws. The compulsion test appears to be met when a private party conspires with the state to deprive one of his or her constitutional rights. *Id. at. at 839-40*. In Martinez, the court rejected the contention that a foster family agency was a state actor based upon the compulsion test, noting that being "pervasively intertwined" with a government entity is insufficient to meet the standards of "coercive influence" or "significant encouragement." *Martinez v. County of Kern*, 2007 U.S. Dist. LEXIS 30150, at *18.

Plaintiff does not seem to even allege in his first amended complaint that Triad was a state actor based the compulsion test. In any event, there is no allegation or evidence that Alameda County compelled Triad to engage in an unconstitutional act, or that Triad conspired with Alameda County to deprive plaintiff of any of his constitutional rights. The gravamen of the first amended complaint is that Triad was negligent in not taking more affirmative steps to ensure the safety of M.M. Plaintiff does not allege that Triad and Alameda County worked closely together in a deliberate effort to deprive J.P. of his relationship with M.M. Triad is not a state actor under the compulsion test.

**F. GOVERNMENTAL NEXUS**

"Arguably, the most vague of the four approaches, the nexus test asks whether 'there is such a close nexus between the State and the challenged action that the seemingly private behavior may be fairly treated as that of the State itself.'" *Kirtley,* 326 F.3d. at 104-1095. The *Martinez* court applied this test to a foster family agency, in light of the state actor allegations made against it. The court rejected the contention that the fact that foster family agencies are regulated by the state makes these agencies state actors. *Martinez,* 2007 U.S. Dist LEXIS 30150, at *18-21.

Analytically, this test seems almost the same as the public function and joint action tests previously discussed. The first amended complaint, in the heading for section H on page 11 states the words "governmental nexus," but nowhere in the body of this pleading is there a reference to governmental nexus. Paragraphs 47-52 of the first amended complaint describe Alameda County's

LAW OFFICES OF
MATHENY SEARS LINKERT & JAIME LLP
3638 AMERICAN RIVER DRIVE
SACRAMENTO, CALIFORNIA 95864

LAW OFFICES OF
MATHENY SEARS LINKERT & JAIME LLP
3638 AMERICAN RIVER DRIVE
SACRAMENTO, CALIFORNIA 95864

investigation duties and its alleged failure to respond to four "referrals" made by Triad and San Joaquin County. Paragraph 54 describes the mandatory duties of Alameda County to supervise and monitor the foster home placement of J.P. and M.M. Paragraph 58 alleges that Alameda County alleges that Triad used Triad to solicit, investigate and train foster parents and that this benefitted Alameda County.

These allegations do not describe any relationship between Triad and Alameda County beyond the typical contractual relationship between a foster family agency and a county social service agency, when the county agrees to place a dependent child in a private nonprofit foster family agency. The *Martinez* court rejected the proposition that the nexus test was satisfied because: 1) foster family agencies place minors who have been involuntarily seized and are in legal custody of the state in certified foster homes; and 2) the state has delegated responsibility to supervise and monitor such placements. *Id. at *19.* The *Martinez* court cited to the United States Supreme Court's observation in *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 459 (1974) that "the mere fact that a business is subject to state regulation does not by itself convert its action into that of the state." *Id. at *20.*

The *Martinez* court also noted that a significant difference between foster family agencies and the state, is that foster family agencies lack authority to involuntarily seize minors. That authority is reserved to the state. *Id.* at *20-21. Welfare & Institutions Code sections 305 and 306. Foster family agencies, such as Triad, may not remove children from their homes. Rather, their authority is limited to removing a foster child from a certified foster home only when there is an imminent risk of harm to the foster child.

. The *Martinez* court concluded that the role and function of the foster family agency "is not broad enough to construct a nexus to state actor status." *Id. at *21.*

The reasoning of the *Martinez* court is sound and should apply to the facts of this case as well, not only as to the governmental nexus test, but as to each of the four state actor tests discussed above.

There are numerous and significant differences between the broad duties of the state, compared to the limited duties of a foster family agency, regarding the removal, placement and

monitoring of foster children who have been adjudicated to be dependents of the court. There are no case-specific facts in this case which warrant a different conclusion than that reached by the *Martinez* court. Triad is not a state actor and the third and fourth causes of action against it should be dismissed.

**G. PLAINTIFF'S NEGLIGENCE CLAIM IS WITHOUT MERIT**

Plaintiff's sixth cause of action is for negligence against Triad. Plaintiff does not allege that he suffered a bodily physical injury. Plaintiff has not asserted a wrongful death claim, for the loss of his relationship with M.M. Instead, he alleges that he has suffered emotional distress and other related general damages because of the death of his sister M.M. (SSUF No.'s 2 and 3 – Issue No. 2). Plaintiff did not observe M.M. ingest the drug that caused her death. (SSUF No. 1 – Issue No. 2).

Because plaintiff did not suffer a physical injury and he does not allege wrongful death damages, the only damages claim that he may attempt to assert through his negligence cause of action are for emotional distress. There are two damages theories available to plaintiff.

The first is a bystander claim. The elements of a bystander claim are stated at Judicial Council of California Civil Jury Instruction (CACI) Number 1621. See *Dillon v. Legg* (1968) 68 Cal. 2d 728 and *Thing v. La Chusa* (1989) 48 Cal. 3d. 644, 647. The Supreme Court in *Thing* admittedly created an arbitrary restriction on bystander recovery, stating, "drawing arbitrary lines is unavoidable if we are to limit liability and establish meaningful rules for application by litigants and lower courts." Id. at p. 666.

The elements, as applied to the facts of our case are as follows: 1) That Triad negligently caused injury to/the death of M.M; 2) That when M.M. ingested the methamphetamine which caused her death, J.P. was present at the scene; 3) That J.P. was then aware that the methamphetamine ingestion was causing the death of M.M.; 4) That J.P. suffered serious emotional distress; and 5) That Triad's conduct was a substantial factor in causing J.P. damages. The California Supreme Court has held that a plaintiff in a bystander claim must at least be aware that the alleged wrongful conduct of the defendant caused harm to his relative. *Bird v. Saenz* (2002) 28 Cal. 4th 910, 920.

LAW OFFICES OF
MATHENY SEARS LINKERT & JAIME LLP
3638 AMERICAN RIVER DRIVE
SACRAMENTO, CALIFORNIA 95864

LAW OFFICES OF
MATHENY SEARS LINKERT & JAIME LLP
3638 AMERICAN RIVER DRIVE
SACRAMENTO, CALIFORNIA 95864

There is no evidence to support the second or third elements of a bystander claim. J.P. has conceded that he did not witness his sister M.M. ingest the methamphetamine which caused M.M.'s death. (SSUF No. 1 – Issue No. 2). One can infer from the very fact-specific first amended complaint that J.P. was not even present at the moment that M.M. ingested the methamphetamine which caused her death. J.P., who was five years old when M.M. died, would not have had the capacity to appreciate that the methamphetamine ingested by M.M. was causing her harm, even if he had seen her ingest it. The bystander claim is, therefore, without merit.

The second theory for a negligence cause of action without physical injury is a direct victim claim. The elements of a direct victim claim are stated at Judicial Council of California Civil Jury Instruction (CACI) Number 1620. They are as follows, as applied to the fact of this case: 1) That Triad was negligent; 2) That plaintiff suffered serious emotional distress; and 3) That Triad's negligence was a substantial factor in causing plaintiff's serious emotional distress.

A direct victim case is one in which the plaintiff's claim of emotional distress is based upon the violation of a duty that is owed directly to the plaintiff, and not based upon the plaintiff witnessing an injury to someone else. *Ragland v. U.S. Bank National Assn*. (2012) 209 Cal. App. 4th 182, 205. The right to assert a direct victim claim attaches only when the defendant's conduct is directed at both the plaintiff and the victim. *Huggins v. Longs Drugs,* 6 Cal. 4th 124, 130 (1993).

Courts have recognized direct victim theories of liability in the case of medical malpractice, when the health care provider has duties to multiple patients and it is foreseeable that the breach of a duty to one patient will cause emotional injury to the other patient. See *Molien v. Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916, 928, *Burgess v. Superior Court (1992)* 2 Cal.4th 1064, 1076, and *Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc., (*1989) 48 Cal. 3d 583. In *Huggins*, a pharmacy provided the wrong dose of a medication to a child, causing physical injury to the child. *Huggins,* supra 6 Cal, 4th at p. 128. The court rejected the direct victim claim asserted by the parents, noting that pharmacists do not owe a duty to protect the emotional well-being of the patient's parents, even if the pharmacist knows the patient is an infant and that the parents will be administering the medication. Id at. 132.

An analogous case to the case at bar is *Martin v. United States*, 984 F.2d 1033, 1035-1036

(9th Circuit 1993). The defendant was a government day care center and it was alleged to have negligently supervised siblings on an outing at Monterey Veterans Memorial park. One sibling was separated from the group, abducted and raped. The rape victim's sibling alleged she was a direct victim for purposes of asserting an emotional distress claim. The court concluded that the defendant owed a duty to both siblings to not supervise them negligently; but it rejected the contention that the defendant had a duty to all children under its care to not let emotional damage harm occur to any of them because of physical harm that may occur to one member of the group. Id. at 1036. The court rejected the contention that a caretaker of multiple children had a duty to not cause emotional distress to a sibling of a child that was negligently supervised and suffered physical harm. Id. at 1036-1037. Also see *E.J. v. United States*, 2013 U.S. Dist. LEXIS 163185, *6-8 (child care center's negligence not directed at parents) and *Steven F. v. Anaheim Union High School* (2003) 112 Cal. App. 4th 904 (negligent supervision of a student by a teacher was not directed at the parents).

J.P. was not the direct victim of the alleged negligence of Triad. The *Martin, E.J.* and *Steven F.* cases stand for the proposition that the negligence of in loco parentis defendants which causes harm to a child, does not give rise to an actionable direct victim emotional distress claim for the parents or siblings of the child who suffers the direct personal injury. Similarly, the alleged failure of Triad to protect M.M. from the harm caused by her ingestion of methamphetamine, does not create a duty on the part of Triad to protect plaintiff from the emotional distress he suffered because of M.M.'s death.

Plaintiff's negligence claim against Triad is without merit

## IV. CONCLUSION

For the reasons stated above, Triad respectfully requests that this court grant its motion for summary judgement or grant its motion for partial summary judgment in the alternative.

Dated: April 9, 2019.

MATHENY SEARS LINKERT & JAIME LLP

By: /s/ Ronald E. Enabnit
RONALD E. ENABNIT, ESQ.
Attorneys for Defendant TRIAD FAMILY SERVICES

LAW OFFICES OF
MATHENY SEARS LINKERT & JAIME LLP
3638 AMERICAN RIVER DRIVE
SACRAMENTO, CALIFORNIA 95864