1  Law Offices of
2  **MATHENY SEARS LINKERT & JAIME LLP**
   RONALD E. ENABNIT, ESQ. (SBN 138062)
3  3638 American River Drive
   Sacramento, California 95864
   Telephone:      (916) 978-3434
4  Facsimile:      (916) 978-3430
   renabnit@mathenysears.com
5

6  Attorneys for Defendant TRIAD FAMILY
   SERVICES
7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10

11 | J. P., by and through his Guardian ad | Case No. 4:17-cv-05679-YGR (SK) |
   | Litem, SHANNON VILLANUEVA |  |
12 |  | **DECLARATION OF RONALD E.** |
   |  | **ENABNIT IN SUPPORT OF DEFENDANT** |
13 | Plaintiffs, | **TRIAD FAMILY SERVICES' MOTION** |
   |  | **FOR SUMMARY JUDGMENT, OR, IN** |
14 | v. | **THE ALTERNATIVE, PARTIAL** |
   |  | **SUMMARY JUDGMENT** |
15 | COUNTY OF ALAMEDA, DIANE |  |
   | DAVIS MAAS, SUE MAY, TRIAD | Date:      June 18, 2019 |
16 | FAMILY SERVICES, MARIA REFUGIO | Time:      2:00 p.m. |
   | MOORE, and DOES 1-30, inclusive, | Place:     Courtroom 1 – 4th Floor |
17 |  |            Oakland Courthouse |
   | Defendants. |            1301 Clay Street, Oakland, CA |
18 |  | Judge:     Hon. Yvonne Gonzalez Rogers |

19  Complaint filed: October 2, 2017
20  Trial Date:  TBD

21

22        I, Ronald E. Enabnit, declare as follows:

23        1.      I am an attorney at law duly licensed to practice before all courts of the State of

24 California.  I am Of Counsel with the law firm of Matheny Sears Linkert & Jaime, LLP, counsel of

25 record for defendant Triad Family Services.  I am familiar with the pleadings and records in this

26 case, and the following is true of my own personal knowledge, except as to those matters which are

27 based upon my information and belief.  I personally attended each of the depositions identified

28 below.

1

LAW OFFICES OF
**MATHENY SEARS LINKERT & JAIME LLP**
3638 AMERICAN RIVER DRIVE
SACRAMENTO, CALIFORNIA 95864

LAW OFFICES OF
**MATHENY SEARS LINKERT & JAIME LLP**
3638 AMERICAN RIVER DRIVE
SACRAMENTO, CALIFORNIA 95864

1    2.      Attached hereto as **Exhibit 1** are true and correct excerpts from the Deposition of

2    Nancy Reagh, taken in this matter on October 18, 2018.

3    3.      Attached hereto as **Exhibit 2** are true and correct excerpts from the Deposition of

4    Shawn Nunn, taken in this matter on September 18, 2018 and true and correct copies of exhibits

5    from Nunn's deposition.

6    4.      Attached hereto as **Exhibit 3** is a Stipulation of Fact executed by counsel for Triad

7    and counsel for J.P.

8       I declare under the penalty of perjury under the laws of the State of California that the

9    foregoing is true and correct.

10   Dated: April 9, 2019                        **MATHENY SEARS LINKERT & JAIME LLP**

11

12                                               By: /s/ Ronald E. Enabnit

13                                               RONALD E. ENABNIT, ESQ.
                                                 Attorneys for Defendant TRIAD FAMILY
14                                               SERVICES

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*DECLARATION OF RONALD E. ENABNIT IN SUPPORT OF DEFENDANT TRIAD FAMILY SERVICES'*
*MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT*

EXHIBIT 1

Atkinson-Baker, Inc.
www.depo.com

1
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
2
--oOo--

3

4
J.P. by and through his
Guardian Ad Litem, SHANNON
5
VILLANUEVA,

CERTIFIED COPY

6
                    Plaintiff,
                                        Case:
7
-vs-
                                        17-cv-05679-YGR
8
COUNTY OF ALAMEDA, DIANE
DAVIS MAAS, SUE MAY, TRIAD
9
FAMILY SERVICES, MARIA
REFUGIO MOORE, and DOES 1-
10
30 inclusive,

11
                    Defendants.
                                    /
12

13

14

15

16
        CONFIDENTIAL DEPOSITION OF NANCY REAGH
                        Volume 1
17
            Thursday, October 18, 2018
                    Martinez, California
18
                        --oOo--

19

20

21

22
ATKINSON-BAKER, INC.
(800) 288-3376
23
www.depo.com
REPORTED BY: HEIDI J. RYDER, CSR NO. 10053
24
FILE NO.: AC0A7F8

25

1  Most CEOs are business people, don't usually have

2  degrees.  May have a business or organizational

3  psychology degree, but not a social work degree.

4       So I have always been blended.  Mark,

5  previous to me, was also blended.  He was an MSW and

6  then he was CEO and president of the board.  So he

7  had the clinical expertise to oversee the program

8  and then the administrator functions to oversee the

9  program.

10     Q.  Okay.  So when you say "clinically," as I am

11  understanding it, you have from your MSW background

12  and experience of being through the ranks a

13  prospective different than the typical people in

14  your position as a CEO?

15     A.  Correct.  Correct.  As a businessperson,

16  making sure insurance is paid and payroll is paid

17  and HR is followed.

18     Q.  Right.

19     A.  That has nothing to do the work of ensuring

20  children and families stay in compliance and are

21  safe and all of that.

22     Q.  So when you say "compliance," I want to

23  understand what you mean by compliance.

24          Compliance with whom?  Let's start there.

25     A.  Well, our -- say community is not correct.

1    Our businesses, nonprofit private foster

2  care agencies are all regulated by Title 22

3  regulations in the state.  And we have different

4  regulations -- it's about that thick (indicating) --

5  of rules and regulations, things going into health

6  and safety codes from the State of California to

7  regulations particular to foster care.  Some are

8  particular to group homes or agencies.

9    But all of those regulations, following

10 those regulations is called being in compliance.

11    Q.  Okay.  And so you must have gained enough of

12 an understanding of what those rules and regulations

13 are in order to ensure compliance; is that right?

14    A.  Yes.

15    Q.  Okay.  To make sure things are in

16 compliance, can you give me an example or two of

17 what you do with relation to ensuring that there is

18 compliance in a day-to-day way?

19    A.  In a day-to-day way in the agency itself?

20 In the foster home?  There is layers.

21    Q.  Well, let's start with the foster home.  Are

22 you, as a CEO, still involved with ensuring

23 compliance of regulations of a foster home?

24    A.  Only in the way that I make sure the forms

25 people are using are update with the latest

Atkinson-Baker, Inc.
www.depo.com

1    Shawn.  And it was the day -- she was taken to the

2    hospital as unresponsive.  I got that call.  And

3    then later in that day, I got, "Oh, and now she has

4    passed away."

5        Q.  Okay.

6            (Discussion off of the record.)

7            (Lunch recess taken at 12:48 p.m.)

8    AFTERNOON SESSION                      12:48 p.m.

9                    EXAMINATION

10   BY MR. KESSLER (Resumed):

11       Q.  So I am going to go over global stuff

12   relating to this.

13           This is a nonprofit corporation; is that

14   what it is?

15       A.  Yes.

16       Q.  And are there shareholders of it?

17       A.  No.  503(c) [sic].

18       Q.  I see.

19           Who determines the salaries of the staff?

20       A.  The board.

21       Q.  Okay.  Can you tell me what the -- I would

22   like to go over the salaries of some folks from 2014

23   to '16 or so.

24           Can you tell me what your salary was in

25   2014, if you remember?

95

1    Q.  Okay.  So counties will contact Triad for
2  placement of children in homes that are certified by
3  Triad; is that correct?
4    A.  Yes.
5    Q.  The -- would it be fair to say that the
6  county delegates Triad to choose the home within
7  their certified homes appropriate for children being
8  referred?
9    A.  We offer homes, sometimes more than one
10  home, and then the county makes the children where
11  they would like the children to go.
12    Q.  So there is a conversation between the
13  social worker, the placement worker from the county
14  and the placement worker for Triad relating to the
15  home, if there is a choice of homes?
16    A.  Usually, yes.  And, again, I haven't done
17  placements in a long time.  Niasha does 99 percent
18  of that work.  She has relationships with many
19  county workers.  So many times they do call and
20  there is a conversation.
21      County workers now like to send stuff over
22  e-mail.  Again, I don't follow up on those.  So
23  there may be a conversation or not.
24      It has been my experience from when I used
25  to do this work or somebody was out for the day and

Atkinson-Baker, Inc.
www.depo.com

```
 1        Q.  I see.
 2        A.  Overseeing the program, the foster care
 3   program.
 4        Q.  Okay.  All right.  Then that's it.
 5                       EXAMINATION
 6   BY MR. ENABNIT:
 7        Q.  You didn't delegate to Shawn while you were
 8   hospitalized the authority for him to make new
 9   policy, did you?
10        A.  No.
11        Q.  You didn't delegate the authority to enter
12   into contracts, did you?
13        A.  No.
14        Q.  You, as the CEO, have the authority to enter
15   into contracts, right?
16        A.  Yes.
17        Q.  So other than anything that I ever said to
18   you, excluding that, are you aware of any
19   information that San Joaquin County CPS or
20   San Joaquin County Human Services Agency ever
21   provided to Alameda County regarding that
22   October 3rd, 2015 ingestion by MM?
23        A.  No.
24        Q.  Have you ever worked for a foster family
25   agency that did any private foster placements?
```

Atkinson-Baker, Inc.
www.depo.com

1      A.   Yes.

2      Q.   And what is a private foster placement?

3      A.   Well, they are not taken away by the county

4   and the court doesn't have jurisdiction over the

5   parent.  But the parents are saying I can't care for

6   my child, maybe temporarily, maybe permanently.  I

7   want this agency to find a foster home for my child,

8   and they pay out of pocket for the services

9   rendered.

10     Q.   In your experience, when that has happened,

11  what role, if any, does the county social service

12  agency or county Department of Child and Family

13  Services or county CPS have vis-a-vis that

14  placement?

15     A.   None.  It is not a court dependent case.  It

16  is like voluntary placement.

17          MR. ENABNIT:  All right.  That's all I have.

18          MR. KESSLER:  Okay.  We're done.  Thank you.

19          THE REPORTER:  Copies orders, gentlemen?

20          MR. KESSLER:  Yes.

21              (Time noted:  5:01 p.m.)

22

23

24

25

Atkinson-Baker, Inc.
www.depo.com

1                    Reporter's Certificate

2

3    STATE OF CALIFORNIA

4    ss.

5    COUNTY OF CONTRA COSTA

6

7            I, HEIDI J. RYDER, a Certified Shorthand

8    Reporter licensed by the State of California, and

9    empowered to administer oaths and affirmations

10   pursuant to Section 2093(b) of the Code of Civil

11   Procedure, do hereby certify:

12           That the witness was present at the time

13   and place herein set forth and was by me sworn to

14   testify as to the truth; that the said proceedings

15   were recorded stenographically by me and were

16   thereafter transcribed by me via computer-assisted

17   transcription; that the foregoing deposition is a

18   true record of the proceedings which then and there

19   took place; that I am a disinterested person to said

20   action.

21           IN WITNESS WHEREOF, I have subscribed my

22   name on November 6, 2018.

23

24

25           HEIDI J. RYDER, CSR 10053

Nancy Reagh
October 18, 2018

```
 1                    Reporter's Certificate

 2

 3    STATE OF CALIFORNIA

 4    ss.

 5    COUNTY OF CONTRA COSTA

 6

 7             I, HEIDI J. RYDER, a Certified Shorthand

 8    Reporter licensed by the State of California, and

 9    empowered to administer oaths and affirmations

10    pursuant to Section 2093(b) of the Code of Civil

11    Procedure, do hereby certify:

12             That the witness was present at the time

13    and place herein set forth and was by me sworn to

14    testify as to the truth; that the said proceedings

15    were recorded stenographically by me and were

16    thereafter transcribed by me via computer-assisted

17    transcription; that the foregoing deposition is a

18    true record of the proceedings which then and there

19    took place; that I am a disinterested person to said

20    action.

21             IN WITNESS WHEREOF, I have subscribed my

22    name.

23

24

25

26

27             HEIDI J. RYDER, CSR 10053

28

      Signature Requested
```

EXHIBIT 2

Atkinson-Baker, Inc.
www.depo.com

1                    U.S. DISTRICT COURT

2             NORTHERN DISTRICT OF CALIFORNIA

3                       -   -   -

4    J.P. by and through his Guardian
     Ad Litem, SHANNON VILLANUEVA,          **CERTIFIED COPY**
5
              Plaintiff,
6
         vs.                          No. 4:17-cv-05679-YGR
7
     COUNTY OF ALAMEDA, DIANE DAVIS
8    MAAS, SUE MAY, TRIAD FAMILY
     SERVICES, MARIA REFUGIO MOORE,
9    and DOES 1-30, inclusive,

10            Defendants.
                                       /
11   _____

12

13

14

15        VIDEOTAPED CONFIDENTIAL DEPOSITION

16          OF TRIAD FAMILY SERVICES

17        BY AND THROUGH SHAWN NUNN

18          SAN LEANDRO, CALIFORNIA

19        TUESDAY, SEPTEMBER 18, 2018

20

21

22   Atkinson-Baker, Inc.

23   Court Reporters
24   www.depo.com

25   REPORTED BY JOANNE BALBONI, CSR NO. 10206

Atkinson-Baker, Inc.
www.depo.com

1   FILE NO.:  AC08C6A

2                     U.S. DISTRICT COURT

3              NORTHERN DISTRICT OF CALIFORNIA

4                       -   -   -

5   J.P. by and through his Guardian
    Ad Litem, SHANNON VILLANUEVA,

6

7           Plaintiff,

        vs.                        No. 4:17-cv-05679-YGR

8
    COUNTY OF ALAMEDA, DIANE DAVIS

9   MAAS, SUE MAY, TRIAD FAMILY
    SERVICES, MARIA REFUGIO MOORE,

10  and DOES 1-30, inclusive,

11          Defendants.
    _____/

12

13

14                                      .

15

16

17          Videotaped deposition of SHAWN NUNN, taken on

18  behalf of Plaintiff, at 68 Monarch Bay Drive, San

19  Leandro, California, commencing at 10:25 a.m., Tuesday,

20  September 18, 2018, before Joanne Balboni, CSR No.

21  10206.

22

23

24

25

Atkinson-Baker, Inc.
www.depo.com

```
 1    A P P E A R A N C E S :

 2

 3         FOR THE PLAINTIFF:

 4         LAW OFFICES OF DARREN JAY KESSLER
           BY:   DARREN JAY KESSLER, ESQ.
 5         3060 El Cerrito Plaza, Suite 37
           El Cerrito, California 94530
 6         (510) 524-7750
           darrenlaw@sbcglobal.net.
 7
           THE SCOTT LAW FIRM
 8         BY:  LIZA DEVRIES, ESQ.
           1388 Sutter Street, Suite 715
 9         San Francisco, California 94109
           (415) 561-9600
10         liza@scottlawfirm.net

11         FOR THE DEFENDANT TRIAD FAMILY SERVICES:

12         MATHENY, SEARS, LINKERT, JAIME
           BY: RONALD E. ENABNIT, ESQ.
13         3638 American River Drive
           Sacramento, California 95864
14         (916) 978-3434
           renabnit@mathenysears.com
15
           FOR THE DEFENDANT MARIA MOORE:
16
           GAVIN, CUNNINGHAM & HUNTER
17         BY:  ELIZABETH GONG LANDESS, ESQ.
           1530 The Alameda, Suite 210
18         San Jose, California 95126
           (408) 294-8500
19         landess@gclitigation.com

20         HAAPALA, THOMPSON & ABERN
           BY:  RYAN KRAFT, ESQ.
21         1939 Harrison Street, Suite 800
           Oakland, California 94612
22         (510) 550-8547
           ryan.kraft@htalaw.com
23
           NICK PERRY, VIDEOGRAPHER
24

25
```

Atkinson-Baker, Inc.
www.depo.com

```
 1                   I N D E X
 2   WITNESS:   SHAWN NUNN
 3   Examination                                Page
 4        By Mr. Kessler                           7
 5        By Ms. Gong Landess                     213
 6        By Ms. DeVries                          226
 7
 8   EXHIBITS
 9                   PLAINTIFF'S
10   NUMBER           DESCRIPTION               PAGE
11   A-    Document entitled "Triad Family Services
           Policy and Procedures"                  6
12
13   B-    Document entitled "Triad Family Services
           Complaints & Allegations Fact Sheet"    6
14   C-    Document entitled "Placement Agency -
           Foster Family Agency Agreement"         6
15
16   D-    Document entitled "Foster Care Social
           Worker - CA (Full Time) Classification" 6
17   E-    Document entitled "Triad Family Services
           Policy and Procedure, Subject:  Personnel" 68
18
19   F-    Document entitled "Jeremyah Palacios,
           DOB:  05-29-10, DOP:  10-01-15"        70
20   G-    Document entitled "Mariah Mustafa,
           DOB:  10-02-12, DOP:  10-01-15         70
21
22   H-    Document entitled "Certificate of Approval
           (For certified family homes)" Bates
           stamped TFS000137                      79
23
24   I-    Document entitled "Certificate of Approval
           (For certified family homes)" Bates
25         stamped TFS000143                      87
```

Atkinson-Baker, Inc.
www.depo.com

| | | |
|---|---|---|
| 1 | Q.  Okay.  Can you spell Hoglund? | 11:35:37 |
| 2 | A.  I don't know how to spell her name. | 11:35:37 |
| 3 | Q.  Okay.  So you mentioned how you are involved | 11:35:50 |
| 4 | with the policy and procedure discussions in relation to | 11:35:56 |
| 5 | the group and with Nancy Reage. | 11:36:00 |
| 6 | Can you tell me how Nancy Reage is involved | 11:36:03 |
| 7 | with the other functions that you do as a director? | 11:36:06 |
| 8 | A.  I communicate with her staffing issues.  I | 11:36:10 |
| 9 | communicate issues with the homes or the individual | 11:36:14 |
| 10 | children as needed. | 11:36:18 |
| 11 | Q.  Now, Triad, would it be fair to describe it as | 11:36:21 |
| 12 | an organization that basically requires a contact and | 11:36:33 |
| 13 | supervision with children? | 11:36:39 |
| 14 | A.  Correct. | 11:36:41 |
| 15 | Q.  So the clients are -- let me not use the word | 11:36:41 |
| 16 | "clients."  You work with families that are going to be | 11:36:58 |
| 17 | available for placements, right?  You work with agencies | 11:37:00 |
| 18 | that would place children in the home -- | 11:37:07 |
| 19 | MR. ENABNIT:  Objection; vague and ambiguous -- | 11:37:11 |
| 20 | BY MR. KESSLER: | 11:37:12 |
| 21 | Q.  -- is that right? | 11:37:12 |
| 22 | MR. ENABNIT:  -- as to agency. | 11:37:13 |
| 23 | MR. KESSLER:  Okay.  I'll rephrase it.  That's | 11:37:16 |
| 24 | a good objection. | 11:37:17 |
| 25 | Q.  How do you get the children to be placed? | 11:37:18 |

54

Atkinson-Baker, Inc.
www.depo.com

| | | |
|---|---|---|
| 1 | A.   Counties. | 11:37:21 |
| 2 | Q.   Okay.   What counties? | 11:37:22 |
| 3 | A.   Alameda County, Contra Costa County, San | 11:37:27 |
| 4 | Joaquin County, Sacramento County, Fresno County, | 11:37:32 |
| 5 | Stanislaus County. | 11:37:36 |
| 6 | Q.   Okay.   So there's a process where you would be | 11:37:38 |
| 7 | contacted or Triad would be contacted to place a child | 11:37:44 |
| 8 | from those counties in one of your homes that are | 11:37:48 |
| 9 | certified, correct? | 11:37:52 |
| 10 | A.   Correct. | 11:37:54 |
| 11 | Q.   Okay.   So when a county places children, are | 11:37:55 |
| 12 | they the ones that pay for those placements, or do you | 11:38:07 |
| 13 | get payment from other sources? | 11:38:11 |
| 14 | A.   I believe that might come from the state. | 11:38:13 |
| 15 | Q.   Okay.   What makes you believe it comes from the | 11:38:21 |
| 16 | state? | 11:38:23 |
| 17 | A.   I don't know.   I just think that's where it | 11:38:24 |
| 18 | might come from. | 11:38:27 |
| 19 | Q.   Okay.   All right.   But wherever it comes from, | 11:38:28 |
| 20 | when a child is placed in Triad, money comes in for that | 11:38:32 |
| 21 | child's placement? | 11:38:40 |
| 22 | A.   Correct. | 11:38:40 |
| 23 | Q.   Okay.   Other than cities or counties or other | 11:38:40 |
| 24 | that you mentioned, do you have placements made | 11:38:45 |
| 25 | privately through private individuals? | 11:38:49 |

Atkinson-Baker, Inc.
www.depo.com

1    A.  No.  And we don't get placements from cities.      11:38:51

2    Q.  Okay.  So when a county contacts you that they      11:38:54

3  have a child or children to be placed, they then are     11:39:05

4  delegating to you the test to place those children in a   11:39:09

5  home that you've certified?  Is that how it works?        11:39:14

6    A.  No.  They require us to submit them a home         11:39:17

7  study of the potential home.                             11:39:21

8    Q.  Okay.                                              11:39:21

9    A.  They would evaluate that and make a decision if   11:39:24

10  that's what they want to choose.                         11:39:26

11    Q.  So they are the ones who choose the homes to be   11:39:28

12  placed ultimately?  They are the ultimate party?         11:39:32

13    A.  Yeah.                                              11:39:36

14    Q.  Okay.  So when you send the home study, do you    11:39:37

15  give them a choice, or do you say, "We've decided this   11:39:44

16  is the right place.  We are looking for your approval"?   11:39:47

17    A.  It's typically one.  On a rare occasion, maybe    11:39:51

18  two, but usually it's one home, yes.                     11:39:55

19    Q.  Okay.  When you do this, is the social worker     11:39:59

20  from the county the one with whom you communicate        11:40:04

21  relating to this placement?                              11:40:07

22        MR. ENABNIT:  So I'm going to object that your    11:40:09

23  question presumes one social worker only from the        11:40:11

24  county.  Vague and ambiguous.  You can answer.           11:40:15

25  BY MR. KESSLER:                                          11:40:19

PMK: Shawn Nunn - Confidential
September 18, 2018

Atkinson-Baker, Inc.
www.depo.com

| | | |
|---|---|---|
| 1 | Q.  Is there a social worker from the county that | 11:40:19 |
| 2 | you communicate with relating to that particular | 11:40:21 |
| 3 | placement or choice? | 11:40:24 |
| 4 | A.  It's typically the placement department. | 11:40:25 |
| 5 | Q.  The placement department from Triad, or the | 11:40:28 |
| 6 | placement department from the county? | 11:40:32 |
| 7 | A.  From the county. | 11:40:33 |
| 8 | Q.  I see.  All right. | 11:40:34 |
| 9 | A.  And I can't speak on what they do from there. | 11:40:39 |
| 10 | Q.  All right.  So do you remember the employees | 11:40:42 |
| 11 | that worked there at Triad in the Lathrop office in | 11:40:57 |
| 12 | October of 2015? | 11:41:02 |
| 13 | A.  I think so. | 11:41:04 |
| 14 | Q.  Who? | 11:41:05 |
| 15 | A.  Marie Hoglund, Joanne Willis.  I believe | 11:41:06 |
| 16 | Stephanie was there, Amy Rose. | 11:41:14 |
| 17 | Q.  Are they two separate people, Amy and Rose? | 11:41:25 |
| 18 | A.  Yeah.  They are the same person.  Rose is her | 11:41:28 |
| 19 | last name. | 11:41:32 |
| 20 | Q.  Oh. | 11:41:33 |
| 21 | A.  I think that's about it. | 11:41:37 |
| 22 | Q.  So I'm going to go through some of the names | 11:41:39 |
| 23 | you mentioned. | 11:41:43 |
| 24 | Joanne, is that Joanne Willis. | 11:41:44 |
| 25 | A.  Correct. | 11:41:47 |

57

Atkinson-Baker, Inc.
www.depo.com

| | | |
|---|---|---|
| 1 | Q.  Well, you've had an opportunity to look at it | 12:08:34 |
| 2 | over? | 12:08:36 |
| 3 | A.  Yeah. | 12:08:36 |
| 4 | Q.  Does it accurately reflect what it represents | 12:08:37 |
| 5 | in this document as what the respective roles were of | 12:08:40 |
| 6 | the Department of Social Services, Community Care | 12:08:44 |
| 7 | Licensing, and Triad Family Services in October of 2015? | 12:08:50 |
| 8 | A.  It is designed for the foster parents to have | 12:08:58 |
| 9 | an overview, not for the social workers. | 12:09:02 |
| 10 | Q.  Okay.  But is this your understanding of the | 12:09:07 |
| 11 | information that was provided to the foster parents -- | 12:09:09 |
| 12 | A.  Right. | 12:09:09 |
| 13 | Q.  -- relating to those respective roles in | 12:09:13 |
| 14 | October of 2015? | 12:09:16 |
| 15 | A.  Correct. | 12:09:17 |
| 16 | Q.  In looking at that, does it accurately reflect | 12:09:17 |
| 17 | your understanding generally of the respective roles of | 12:09:23 |
| 18 | these three entities? | 12:09:26 |
| 19 | A.  Yes. | 12:09:29 |
| 20 | Q.  I'm sorry? | 12:09:29 |
| 21 | A.  Yes. | 12:09:32 |
| 22 | Q.  All right.  And then looking at Exhibit C for | 12:09:33 |
| 23 | identification, do you recognize that? | 12:09:42 |
| 24 | A.  Yes, I do. | 12:09:43 |
| 25 | Q.  What is it? | 12:09:44 |

65

Atkinson-Baker, Inc.
www.depo.com

```
1        A.   It's our placement agreement.              12:09:45

2        Q.   Is this an agreement that was used in all cases   12:09:47

3   in October of 2015 for placements of children in your   12:09:51

4   certified homes?                                       12:09:57

5        A.   Yes.                                         12:09:57

6        Q.   Okay.  Did you have an opportunity to review  12:09:58

7   it?                                                    12:10:04

8        A.   Yeah.                                        12:10:04

9        Q.   Does it appear that the items stated in this  12:10:05

10   agreement accurately reflect what the agreement was   12:10:11

11   between the agency stated here?  And I'm going to      12:10:17

12   specify on one column on the left, it appears to be   12:10:20

13   referring to the placement agency.  And on the other  12:10:24

14   column, it states, "Foster family agency."  So I'll go  12:10:27

15   one at a time.                                         12:10:33

16        With regard to the column that talks about the   12:10:34

17   agreements of the placement agency, is that your      12:10:36

18   understanding of what was the agreement with relation to  12:10:39

19   placements in October of 2015?                        12:10:43

20        A.   Yes.                                         12:10:46

21        Q.   With relation to what the agreement is relating  12:10:46

22   to, the services and responsibilities of the foster   12:10:52

23   family agency, and in this case, Triad, in 2015, did  12:10:56

24   this accurately reflect what those responsibilities   12:11:00

25   were?                                                  12:11:03
```

Atkinson-Baker, Inc.
www.depo.com

| | | |
|---|---|---|
| 1 | A.  Yes. | 12:11:04 |
| 2 | Q.  Okay.  Thank you. | 12:11:04 |
| 3 | And now looking at item D, do you recognize | 12:11:09 |
| 4 | that? | 12:11:15 |
| 5 | A.  Yes. | 12:11:15 |
| 6 | Q.  What is it? | 12:11:17 |
| 7 | A.  It looks to be a description of the position. | 12:11:20 |
| 8 | Q.  Did you have an opportunity to look it over? | 12:11:24 |
| 9 | A.  I did. | 12:11:25 |
| 10 | Q.  And in this document that's entitled "The | 12:11:26 |
| 11 | Foster Care Social worker - CA (full-time)," there's a | 12:11:32 |
| 12 | title head that says "Duties" with a list of 13 items on | 12:11:37 |
| 13 | the front side. | 12:11:37 |
| 14 | Did you look those over? | 12:11:52 |
| 15 | A.  I did. | 12:11:54 |
| 16 | Q.  Do they accurately reflect what the duties of a | 12:11:56 |
| 17 | social worker in Triad were at the time of October of | 12:11:59 |
| 18 | 2015? | 12:12:02 |
| 19 | A.  Yes. | 12:12:04 |
| 20 | Q.  Okay.  Looking at the other side, with regard | 12:12:05 |
| 21 | to qualifications, were these the qualifications that | 12:12:09 |
| 22 | were required of a social worker position in October of | 12:12:12 |
| 23 | 2015? | 12:12:15 |
| 24 | A.  Yeah, I guess, yes. | 12:12:17 |
| 25 | MR. KESSLER:  Okay.  All right.  Just out of | 12:12:21 |

PMK: Shawn Nunn - Confidential
September 18, 2018

Atkinson-Baker, Inc.
www.depo.com

| | | |
|---|---|---|
| 1 | general neglect, right? | 13:50:52 |
| 2 | A.  Not that I'm aware of. | 13:50:56 |
| 3 | Q.  So that's not your experience?  You never | 13:50:57 |
| 4 | received that type of information from CCL? | 13:50:59 |
| 5 | A.  Not that I'm aware of, no. | 13:51:01 |
| 6 | Q.  And there was nothing in writing from CCL, or | 13:51:03 |
| 7 | it was all verbal at this time? | 13:51:05 |
| 8 | A.  I believe so, yes. | 13:51:06 |
| 9 | Q.  Okay.  Was it your practice that you would call | 13:51:07 |
| 10 | CCL to find out about a home that you were reviewing for | 13:51:18 |
| 11 | approval? | 13:51:23 |
| 12 | A.  Yeah.  We went through that earlier.  We are | 13:51:23 |
| 13 | mandated to call CCL.  We are also mandated to call the | 13:51:27 |
| 14 | previous foster agencies if they were certified prior. | 13:51:31 |
| 15 | Q.  So that mandate existed in October of 2015? | 13:51:35 |
| 16 | A.  Yes, it did. | 13:51:38 |
| 17 | Q.  Well, it looks like this happened in September | 13:51:40 |
| 18 | of 2015.  So that would be true then as well, right? | 13:51:45 |
| 19 | A.  Correct. | 13:51:49 |
| 20 | Q.  Okay.  So from this Exhibit H, it appears that | 13:51:54 |
| 21 | the home was approved effective September 9th of 2015; | 13:51:59 |
| 22 | is that right? | 13:52:04 |
| 23 | A.  Defective? | 13:52:04 |
| 24 | Q.  Effective. | 13:52:07 |
| 25 | A.  Effective? | 13:52:08 |

85

Atkinson-Baker, Inc.
www.depo.com

| | | |
|---|---|---|
| 1 | Q.  Right. | 13:52:10 |
| 2 | A.  Yeah. | 13:52:10 |
| 3 | Q.  So being effective means from that day forward, | 13:52:10 |
| 4 | kids can be placed in that home?  Is that what that | 13:52:15 |
| 5 | means? | 13:52:18 |
| 6 | A.  Yeah. | 13:52:18 |
| 7 | Q.  Okay.  Do you recall what information you | 13:52:19 |
| 8 | received from CCL relating to Maria Moore before placing | 13:52:23 |
| 9 | this, before certifying for approval? | 13:52:28 |
| 10 | A.  I don't remember. | 13:52:30 |
| 11 | Q.  Do you keep notes or any records in Triad | 13:52:30 |
| 12 | relating to communications with CCL about what they tell | 13:52:36 |
| 13 | you? | 13:52:40 |
| 14 | A.  Yep, absolutely. | 13:52:40 |
| 15 | Q.  Where would those notes be? | 13:52:41 |
| 16 | A.  In the home binder. | 13:52:43 |
| 17 | Q.  The home binder being the binder relating to | 13:52:45 |
| 18 | Maria Moore? | 13:52:48 |
| 19 | A.  Maria Moore. | 13:52:49 |
| 20 | Q.  Okay.  Wait a second. | 13:52:51 |
| 21 | A.  It should be towards the back. | 13:53:41 |
| 22 | Q.  What's that? | 13:53:42 |
| 23 | A.  It should be towards the back of it. | 13:53:43 |
| 24 | MR. KESSLER:  Hold on a second.  I'm going -- I | 13:54:00 |
| 25 | have this copy that I want to get marked. | 13:54:33 |

PMK: Shawn Nunn - Confidential
September 18, 2018

STATE OF CALIFORNIA - HEALTH AND HUMAN SERVICES AGENCY

CALIFORNIA DEPARTMENT OF SOCIAL SERVICES

# PLACEMENT AGENCY - FOSTER FAMILY AGENCY AGREEMENT
## CHILD PLACED BY AGENCY IN FOSTER FAMILY AGENCY

| NAME OF CHILD | FFA NAME |
| --- | --- |
| | TRIAD FAMILY SERVICES |
| BIRTH DATE OF CHILD | DATE PLACED WITH FFA |
| CASE NUMBER | DATE FIRST ENTERED FOSTER CARE |

The Placement Agency will pay $ _____ per month in return for the above named child's care and supervision as defined in Welfare and Institutions Code 11460 and other applicable law and regulations.  First payment to be made within 45 days after placement with subsequent payments to be made monthly.

| PLACEMENT AGENCY AGREES TO | FOSTER FAMILY AGENCY AGREES TO |
| --- | --- |
| 1. Provide the Foster Family Agency (FFA) with knowledge of the background and needs of this child. This shall include but not be limited to the social work assessment, medical reports, educational assessments, psychiatric/psychological evaluations and identification of special needs. This shall be made available to the FFA within 14 days from date of placement. | 1. Provide this child with foster parent(s) who have been certified to care for the child's needs in accordance with applicable laws and regulations and educational stability requirement. |
| 2. Inform the FFA, before placement, of this child's behaviors and proclivities that might be harmful to others (including pets) in the home, school or neighborhood. | 2. Conform to applicable Title 22, Division 6 regulations and all laws governing foster care. |
| 3. Work with the FFA in the development and progress of a needs and services plan. The county placing agency will notify and invite the FFA to participate in any child and family team meetings to discuss the child's needs and services plan. | 3. Notify the placing agency within 24 hours (unless there is a separate written agreement with the placing agency) by phone  followed in writing of significant changes in the child's health,  behavior or location as well as significant issues including suspected physical or psychological abuse, death, injury, unusual incidents, absence of a child, placement issues and school non-attendance and all items listed under Section 80061 of Title 22, Division 6. |
| 4. Work with FFA staff toward successful completion of the child's needs and services plan, a positive placement outcome and timely permanency for the child. Provide the FFA a JV 220A, Prescribing Physician's Statement, if applicable, and subsequent renewals. | 4. Work together with the placing agency to encourage the maintenance of the familial-child relationship and include the child's family members, as indicated in the needs and services plan, in treatment planning and/or child and family teams whenever possible and cooperate with the reunification process. |
| 5. Work together with the FFA to develop and maintain positive relationships with the child's parents (or guardians) and other family members, and cooperate with the reunification process, e.g. provide written information regarding a child's medical and transportation needs. | 5. Use constructive alternative methods of discipline; not use corporal punishment; deprivation of meals, monetary allowances, visits from parents, or home visits; threat of removal or any degrading or humiliating punishment. |
| 6. Maintain contact with the child monthly or as specified in the child's approved case plan. | 6. Respect and keep confidential information given about this child and his/her family. |
| 7. Continue paying for the child's care as long as the child remains in placement or in the absence of the child the placing agency asks the  FFA to retain an open placement. | 7. Work with the placing agency to develop and submit to them a needs and services plan that develops an understanding of the responsibilities, objectives and requirements of the agency in regard to the care of this child, including the information listed on the reverse side of this form, within 30 days of placement of the child.  The needs and services plan shall be updated at least every six months. |
| 8. Provide a  Medi-Cal  card or other medical coverage and a Medical Consent form signed by the child's parents, legal guardian or court at the time of placement. | 8. Written progress reports shall be provided at least every six months or more frequently by mutual agreement. |
| 9. Inform the FFA of its clothing allowance policy and provide the funding consistent with those policies or any revised policies. | 9. Give placing agency 7 day notice of intent to discharge or move this child. Notify the placing agency of any intended move of this child between certified homes prior to the move. The FFA has the authority to move a child in the case of imminent risk to the child or family.  The FFA shall notify the placing agency within 24 hours of such move. |
| 10. Pay for medical costs incurred prior to the establishment of Medi-Cal eligibility. | 10. FFA social worker shall visit this child in private in their foster home at least once per calendar month and provide documentation of these visits to the placing agency caseworker/probation officer on a flow basis every month as visits are completed. |
| 11. Verify and remit/reconcile any underpayments within 45 days of FFA notification of such underpayments. | 11. Provide state and federal agencies access to records as provided by state and federal law. |
| 12. Notify the FFA within 12 months of suspected overpayments, in accordance with applicable laws and regulations. | 12. Notify the placing agency if the child receives any source of income such as income from work, SSI, SSA, child support, etc.  Notify the county of any property the child obtains, including bank accounts. (It will be the county's responsibility to verify the  income/property.) |
| 13. Provide for arrangements for school of origin travel as appropriate. | 13. Follow any requirements associated with the county's clothing allowance policy and procedures. |
| | 14. Remit any overpayment in full to the county welfare department upon receipt of a notice of action or following the completion of due process. |
| | 15. Inform county upon discovery of any apparent overpayment. |
| 14. Provide a contact telephone number for emergencies and after business hours: Emergency #  (916) 572-7157 | 16. Immediately notify the placing agency of any changes to the child's educational travel arrangements (if applicable) including a change in certified homes. |



EXHIBIT
C
9-18-18
PENGAD 800-631-6989

SOC 154A (12/11) REQUIRED FORM - NO SUBSTITUTES PERMITTED

STATE OF CALIFORNIA - HEALTH AND HUMAN SERVICES AGENCY

CALIFORNIA DEPARTMENT OF SOCIAL SERVICES

**Initial needs and services plan summary shall include:**

A.  Medical and Dental needs

B.  Psychological/psychiatric evaluation obtained or scheduled

C.  Staffing review summaries

D.  Educational assessment

E.  Peer adjustment

F.  Relationship to adults

G.  Involvement in recreation programs

H.  Behavior Problems

I.  Short-term treatment objectives (goals established for next 3 months)

J.  Long-range goals including anticipated length of placement

K.  Tasks planned to reach objectives and goals and who will be performing these tasks, including agency service activity

L.  Identification of unmet needs

M.  Involvement of child and his parents in the treatment program

**Periodic update of needs and services plan shall include:**

A.  Current status of child's physical and psychological health as well as confirmation of medical and dental exams

B.  Reassessment of child's adjustment to the foster home, treatment program, peers and school

C.  Progress toward short-term objectives and long-range goals including tasks which have been performed to reach these objectives and goals

D.  Reassessment of unmet needs and efforts made to meet these needs

E.  Modification of treatment plan, tasks to be performed and anticipated length of placement

F.  Involvement of child and his parents in treatment program

**By this signature I attest that I have read this agreement and agree to fulfill these requirements and I am authorized on behalf of my agency to sign this.  The terms of this agreement shall remain in force until changed by mutual consent, in writing, of both parties.**

| CHILD'S PLACEMENT WORKER REPRESENTATIVE'S NAME | | PHONE |
|---|---|---|
| PRINT:                          SIGNATURE: | | ( ) |
| COUNTY AND NAME OF AGENCY | TITLE | DATE |
| | | |
| FOSTER FAMILY AGENCY REPRESENTATIVE'S NAME | | PHONE |
| PRINT:                          SIGNATURE: | | (510) 222-2666 |
| NAME OF AGENCY          TRIAD FAMILY SERVICES | TITLE          PLACEMENT COORDINATOR | DATE |
| FFA ADDRESS          1901 ROYAL OAKS DRIVE, SUITE #100 SACRAMENTO CALIFORNIA 95815-4235 | | |

SOC 154A (12/11) REQUIRED FORM - NO SUBSTITUTES PERMITTED

TFS000114

STATE OF CALIFORNIA-HEALTH AND HUMAN SERVICE AGENCY

CALIFORNIA DEPARTMENT OF SOCIAL SERVICES
COMMUNITY CARE LICENSING

# CERTIFICATE OF APPROVAL
### (For certified family homes)

Note: The Community Care Facilities Act beginning with Section 1500 of the California Health and Safety Code authorizes the State Department of Social Services to license agencies to engage in home finding functions. The Foster Family Agency listed below is authorized by the Community Care Licensing Division of the State Department of Social Services to recruit, train, select and certify for exclusive use certain homes that meet state licensing standards and are suitable for the Foster Family Agency's placement need. A residential home selected and approved for exclusive use for the reception and care of children placed by the Foster Family Agency is exempt from the requirement of licensure, but must otherwise meet licensing standards. This form is used as an authorization by the Foster Family Agency to verify that a selected home is certified for exclusive placement. The original is to be posted or maintained in the home. A copy shall be maintained in file at the agency.

In accordance with applicable provisions of the Health and Safety Code of California and regulations of the California State Department of Social Services, the licensed Foster Family Agency shown below hereby grants certification to:

Home Provider:   Maria Moore

Home Address:   5014 Kimball Hill Cir.

Stockton, CA 95210

to receive and provide care for children placed by the agency.

This Certificate of Approval:

1. Does not permit the acceptance of children for care from any other agency, individual, parent or guardian.

2. Is not transferable; is limited to the terms of the certificate, and is valid for one year, but may be terminated earlier at the discretion of the Foster Family Agency.

3. Is granted upon the following conditions:

Capacity:   4*         Age Range of Youth:   0 -18

Ambulatory Status of Home:   Ambulatory

Client Preferences:   Male/Female

Specific Limitations:   None.

Effective Date:   9-9-15         Expiration Date:   9-9-16

I hereby certify that the above named facility meets the licensing standards in California Administrative Code, Title 22, Division 6.

**Triad Family Services**
Foster Family Agency

397005591
License Number

17259 Golden Valley Parkway

**Lathrop, CA 95330**
Address

Foster Family Agency Representative
Director: Shawn Nunn, M.A.

EXHIBIT
H
9-18-18

Atkinson-Baker, Inc.
www.depo.com

```
 1                      REPORTER'S CERTIFICATE

 2

 3          I, JOANNE BALBONI, CSR No. 10206, Certified

 4   Shorthand Reporter, certify:

 5          That the foregoing proceedings were taken before

 6   me at the time and place therein set forth, at which

 7   time the witness was put under oath by me;

 8          That the testimony of the witness, the questions

 9   propounded, and all objections and statements made at

10   the time of the examination were recorded

11   stenographically by me and were thereafter transcribed;

12          That the foregoing is a true and correct

13   transcript of my shorthand notes so taken.

14          I further certify that I am not a relative or

15   employee of any attorney of the parties, nor financially

16   interested in the action.

17          I declare under penalty of perjury under the

18   laws of California that the foregoing is true and

19   correct.  Witness will not read and sign.

20          Dated this 4th day of October, 2018

21

22          JOANNE BALBONI, CSR No. 10206.

23

24

25
```

239

EXHIBIT 3

1    Law Offices of
       **MATHENY SEARS LINKERT & JAIME LLP**
2    RONALD E. ENABNIT, ESQ. (SBN 138062)
       3638 American River Drive
3    Sacramento, California 95864
       Telephone:     (916) 978-3434
4    Facsimile:      (916) 978-3430
       renabnit@mathenysears.com
5

6    Attorneys for Defendant TRIAD FAMILY
       SERVICES
7

8                    UNITED STATES DISTRICT COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10

11    J.P., by and through his Guardian ad        Case No. 4:17-cv-05679-YGR (SK)
       Litem, SHANNON VILLANUEVA
12                                        **STIPULATION OF FACT FOR THE**
                                         **LIMITED PURPOSE OF TRIAD FAMILY**
13                  Plaintiffs,                **SERVICES' MOTION FOR SUMMARY**
                                         **JUDGMENT**
14       v.

15    COUNTY OF ALAMEDA, DIANE          Date:        June 18, 2019
       DAVIS MAAS, SUE MAY, TRIAD         Time:        2:00 p.m.
16    FAMILY SERVICES, MARIA REFUGIO    Place:       Courtroom 1 – 4th Floor, Oakland
       MOORE, and DOES 1-30, inclusive,                   Courthouse, 1301 Clay Street,
17                                                Oakland, CA
                Defendants.           Judge:       Hon. Yvonne Gonzalez Rogers
18

19                                      Complaint filed: October 2, 2017
                                     Trial Date:   TBD
20

21

22

23                                      Complaint filed: October 2, 2017

24

25

26          Defendant TRIAD FAMILY SERVICES ("TRIAD") and plaintiff J.P., by and through their

27    respective counsel, hereby stipulate to, and will not dispute, the following fact, for the limited

28    purpose only of TRIAD'S Motion for Summary Judgment:  Plaintiff J.P. did not observe or witness

LAW OFFICES OF
**MATHENY SEARS LINKERT & JAIME LLP**
3638 AMERICAN RIVER DRIVE
SACRAMENTO, CALIFORNIA 95864

                                                       1

1  his sister M.M. ingesting (such as taking, smoking, eating or imbibing) the drug/substance which

2  caused M.M.'s death on October 16, 2015.

3

4  Dated: March 12, 2019

5

MATHENY SEARS LINKERT & JAIME LLP

6

7  By: Ronald E. Enabnit, ESQ.

8  Attorneys for Defendant TRIAD FAMILY
   SERVICES

9  Dated: March 12, 2019

10

SCOTT LAW FIRM

11

12  By: Lizabeth N. de Vries, ESQ.
   Attorneys for Plaintiff J.P.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES OF
MATHENY SEARS LINKERT & JAIME LLP
3638 AMERICAN RIVER DRIVE
SACRAMENTO, CALIFORNIA 95864